HERMAN ANDREWS V. STATE

No. 28,121. March 7, 1956.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) April 25, 1956.

*Morris Rolston* and *T. R. Florey, Jr.*, Mt. Pleasant for appellant.

*Bird Old, Jr.* District Attorney, and *Alford Flanagan*, County Attorney, Mt. Pleasant, and *Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for rape; the punishment, five years.

The sufficiency of the evidence to sustain the conviction is challenged. Appellant cites, in support of his contention, Kil-

lingsworth v. State, 154 Tex. Cr. R. 223, 226 S.W. 2d 456, and contends that the prosecutrix failed to make outcry to the officers at the first opportunity, and that the evidence reveals that she did not make sufficient resistance to appellant's advances.

We summarize the testimony in order to determine whether the jury verdict finds support in the evidence.

The prosecutrix, 19 years of age, lived with her parents at Omaha. Appellant, age 31, resided at Mt. Pleasant.

The prosecutrix and her friend and guest Mary, clad in blue jeans, left the home of prosecutrix in company with appellant and Alvis Allen about 10 a.m. on the day in question, riding in appellant's car. They drove, among other places, to the home of James Easley, who was in bed suffering from a gunshot wound, and back to the home of the prosecutrix, and to Elmer Gunn's place, where appellant secured six half-pints of whisky.

There is conflicting testimony as to when, in point of time, they visited James Easley and when the whisky was obtained from Gunn.

The prosecutrix had obtained permission from her mother to go for the ride and returned about 2 P.M. as she had agreed she would. But her mother was not at home and prosecutrix, after making an effort to locate her, left a note and after some 20 or 30 minutes again left with her guest and the two men.

It was on this ride, according to the testimony of prosecutrix and Mary, that the men obtained the whisky and began drinking. Both girls testified that they drank none of the whisky but the defense testimony was to the contrary.

After consuming much of the whisky appellant became angry and began to talk about the shooting of his friend Easley by one Bun Pruitt, and about the burning of a house in which he had a saddle, and which house was occupied by Easley. In this connection he stated that the house was burned by one of three men, one of those named being the father of the prosecutrix' guest and friend Mary, and threatened that if he found out who did it it was going to be too bad for them, and also threatened to kill the man who shot Easley.

Prior to this time there was no suggestion of sexual inter-

course. The girls freely admitted "smooching" with and kissing both of the men, but denied any further indiscretions.

Both appellant and Alvis Allen admitted having sexual relations with prosecutrix, and claimed that it was her desire that they do so and that she consented and cooperated fully.

It was the further testimony of Alvis Allen that Mary agreed to his having sexual relations with her, but she left him before the act was accomplished because the whisky she drank made her ill.

The prosecutrix gave the following version of the affair which followed appellant's outburst and threats:

She testified that though appellant had, up to that time, done nothing to her and had offered no violence toward her, she was frightened because of his remarks and the way he was acting, that she wanted to get out at a filling station where they stopped but was prevented from doing so by appellant who told her "It won't be long before we take you home;" that they drove out on a country road and stopped near a railroad crossing and appellant told her to get out, and when she said she did not want to he caught her arm and pulled her out; that she told him she wanted to get back in the car and kept trying to get back in but appellant would not permit her to do so; that as Alvis was driving away in the car with Mary she "hollered at them" but they did not stop; that appellant was staggering around like he was drunk but when she jerked loose from him and pushed him he straightened up and never did stagger again; that he caught her arm, put pressure on it and twisted it behind her and took her into the woods; that when he would exert pressure on her arm she suffered great pain; that he carried her in his arms across a branch; that when she resisted in any way he twisted the arm he was holding her by, behind her, and put on pressure; that he kicked back some "sticks and things" and told her to pull off her clothes, and when she refused he removed her blue jeans and panties, took off his trousers and shorts and forced her down on the ground and on his trousers; that he forced her legs apart by "putting his knee cap on my leg" above her knees and mashing it and despite her resistance ravished her.

The prosecutrix further testified that during her resistance she slapped appellant, and when she did "he would tell me if I knew what was good for me I had better quit," and every once

in a while he would say a curse word; that when he penetrated her female organ it hurt; that she started to cry and he told her to shut up; that she struggled and fought with him all she could and did everything within her power to prevent being raped; resisted him to the utmost; but when he twisted and applied pressure to her arm "It hurt so bad I had to give;" that she "was scared to death;" that she had never before had sexual relations.

After the act of intercourse was completed and the two had put on their clothing, appellant agreed to take the prosecutrix home and as they returned to the road Alvis Allen, in response to appellant's whistle, drove up and they got in the car.

The evidence is in conflict as to whether Mary was in the car at that time. She and the prosecutrix testified that she was, but the two men testified that Allen was then alone.

Allen testified that he saw appellant and the prosecutrix cross the fence and began to remove their clothes, and that he then drove a short distance away and got out of the car preparing for the promised sexual intercourse with Mary; that they had another drink of whisky and Mary stated that she was ill and walked away; that when she did not return, he called but could not find her, and that he drove back to meet appellant and the prosecutrix.

Mary and the prosecutrix testified that Allen and Mary left the car after appellant and prosecutrix had returned, and after prosecutrix, in answer to Mary's inquiry, said she was all right.

Mary's version of the affair with Allen was that he got her away from the car to tell her something; that she was concerned about prosecutrix and about herself; that Allen had not proposed an act of intercourse with her before appellant and prosecutrix left the car and that she had not agreed to such; that after getting her away from the car Allen stated that appellant "had gotten some and he thought he should deserve some too;" that she refused and he drug her out beside the road, pushed her down on her back and started taking off her blouse. At this time, she testified, a car came by. Allen told her to straighten up and act like nothing was happening and she did, and after the car passed she jerked loose and ran to a house. Thereafter she was taken to town and reported the attack upon her to the officers.

Returning to Allen, appellant and the prosecutrix, after Mary had escaped, Allen directed his attention to the prosecutrix and succeeded in having sexual intercourse with her in the car on two occasions before officers, who had learned of Mary's complaint, intercepted the car and arrested Allen. These officers told the prosecutrix to drive appellant's car, for the purpose of taking appellant, whose operator's license had been suspended because of a felony conviction for driving while intoxicated, to his home or to town.

She testified that there was some conversation between appellant and the officers which she did not understand and that the officers were laughing.

At any rate, she turned off the road leading to Mt. Pleasant at the direction of appellant, and soon thereafter other officers took both appellant and the prosecutrix to jail.

The prosecutrix did not report to the officers who took Allen into custody, nor to the officers who took her to jail, that she had been attacked.

She first reported the fact that she had been ravished by appellant and by Allen after she and appellant had been placed in jail. This was when Mary came to the jail in company with officers. She testified that she was afraid to make outcry before that time; that she intended to, though because of fear she had told appellant she was not going to "tell on him;" that she wanted to be in town before she told anything; wanted plenty around to make sure she had protection; "I didn't trust anybody at that point, it seemed like I couldn't."

Prosecutrix was immediately taken to Titus County Memorial Hospital where she was examined by Dr. John M. Ellis, whose qualifications as a physician and surgeon and as an expert witness in matters connected with his profession were admitted.

Dr. Ellis examined the vagina of the prosecutrix carefully and thoroughly and testified: "It was red, excoriated as I would say, slightly skinned and irritated." "Excoriated" meaning slight abrasion or slight skinned places, that the skin was broken; that ordinarily two fingers could be inserted in the vagina of a female who had engaged in several acts of intercourse and three into the vagina of a married woman who had borne children; that he was able to insert but one finger in the vagina of the prosecutrix, and this caused her to rive and

scream out with pain, and that her exhibition of pain was sincere and genuine, that the tissues around the vagina were very snug and very firm; that live male sperm were found in her vagina; that from his examination he was of the opinion that the prosecutrix had not had an act of intercourse prior to that day.

Dr. Ellis further testified that he observed "fresh bruised marks with slight swelling an inch by a half inch on the calf of her left leg; an abrasion or skinned place three inches in length on her right leg below the knee and a bruise one inch by one-half inch on the right thigh," and also "there were bits of leaves and grass on the buttox;" that the prosecutrix complained about her arm but he did not see any bruised marks or anything wrong with the arm.

Dr. Ellis testified, without objection, that in his opinion the abrasions he found in the vagina of the prosecutrix were caused by a penis.

Numerous witnesses attested to the good reputation of prosecutrix for virtue and chastity.

There are many facts and circumstances which are deemed sufficient to distinguish the case before us from Killingsworth v. State, 154 Tex. Cr. R. 223, 226 S.W. 2d 456, such as the bruises and marks of violence upon the body; the lack of opportunity to escape such as was offered the girl in the Killingsworth case when Killingsworth got out of the truck on the opposite side, and threats. Neither bruises on the body nor threats by the attacker were present in the Killingsworth case and are present here.

The facts here are much stronger than those held sufficient to sustain the conviction upon the second appeal in Killingsworth v. State, reported in 155 Tex. Cr. R. 511, 236 S.W. 2d 794, where the failure of the prosecutrix to escape was explained by her testimony that at the time Killingsworth got out of the truck and walked around it she did not believe that he was going to ravish her by force.

The jury, under appropriate instructions from the court, accepted the state's theory and found beyond a reasonable doubt that the prosecutrix did not give consent, expressed or implied, but made and used every exertion and means within her power to prevent appellant from having sexual intercourse with her,

and that notwithstanding such resistance and want of consent, appellant by the use of such force as might reasonably be supposed to be sufficient to overcome such resistance, had carnal knowledge of the prosecutrix.

We find the evidence sufficient to support the jury's findings. We also conclude that the failure of the prosecutrix to make outcry to the officers before her friend Mary came to the jail, in view of her explanation, did not preclude a finding by the jury that she did not consent but resisted and was ravished by force.

Her failure to report the attack to the officers would appear to be a logical result of the fact that the officers laughed over their conversation with the appellant, and the prosecutrix "didn't trust anybody at that point."

While Dr. Ellis was on the stand and after he had testified on cross-examination that he did not know how the skin abrasions on the lips of the vagina of the prosecutrix were made, but found live sperm in the vagina, he was asked to state his opinion as to how the abrasions were made and answered: "In my opinion, when I saw the girl, she was terrified, embarrassed and had been raped." Appellant objected on the ground that the answer was not responsive, was prejudicial and inflammatory and invaded the province of the jury, and moved for a mistrial.

The trial court promptly withdrew the answer wherein the doctor expressed the opinion that the girl had been raped, and instructed the jury to blot it from their minds as far as they could humanly do so, but declined to grant a mistrial.

Appellant urges that the volunteered statement of the doctor that the prosecutrix had been raped was injurious to his defense and in all probability tended to and did influence the jury in returning a verdict of guilt against him.

In view of the trial court's prompt action in withdrawing the statement from the jury and of the testimony and opinions of the doctor admitted in evidence, we conclude that the trial court did not err in refusing to declare a mistrial.

It will be observed that the doctor expressed the opinion that the girl had not had previous sexual experiences; that her vagina was slightly skinned and irritated; fresh bruise marks were found on her legs; that when he saw her a few hours after

the act occurred she was terrified and embarrassed; that live male sperm was found in her vagina, and in his opinion the abrasions were caused by a penis.

It would appear from the doctor's testimony, aside from the statement which was the basis for the motion for mistrial, that there could be little question in the minds of the jurors as to his belief that the girl had been ravished and had not consented to the acts of intercourse.

Under such facts the volunteered statement of the doctor that the girl had been raped, which was promptly withdrawn, cannot be said to have influenced the jury and caused them to return a verdict assessing the minimum punishment.

That the trial court properly and effectually withdrew the statement of the doctor from the jury, if it could be withdrawn, is made manifest by the fact that an additional instruction on the matter was deleted from the court's charge upon appellant's objection that no further instruction should be given.

Appellant's remaining claim for reversal is directed to the closing argument of the district attorney.

The bill of exception affirmatively shows that the remarks complained of were made in answer to the argument of appellant's counsel wherein he said "Why didn't the State introduce the clothing of the prosecutrix to see if they were torn?"

Though counsel appear to differ as to the admissibility of the clothing referred to, counsel for the state was not precluded from answering such argument of appellant's counsel. It was not too late for such clothing to be tendered and offered, if appellant's counsel cared to waive any ground of objection he may have had or to offer the clothing himself.

The bill, showing that the district attorney answered the above argument of appellant's counsel with the statement that appellant's counsel well knew that the exhibiting of the clothing to the jury would require that a mistrial be declared does not call for reversal of the conviction.

The clothing mentioned are not before us and are not described in the record in such manner that we might determine the question of their admissibility.

The evidence is found sufficient to sustain the jury's verdict and no reversible error appears.

The judgment is affirmed.