PAUL CHARLES BUNDREN, JR., V. THE STATE.

No. 23990. Delivered April 7, 1948.
Rehearing Denied May 19, 1948.

*James H. Martin* and *A. S. Baskett*, both of Dallas, for appellant.

*Will R. Wilson, Jr.*, District Attorney, and *William B. Henley, Jr.*, and *George P. Blackburn*, Assistant District Attorneys, all of Dallas, and *Ernest S. Goens*, State's Attorney of Austin, for the State.

DAVIDSON, Judge.

This is a case of rape by force; the punishment, ten years in the penitentiary.

Prosecutrix, a twenty-eight-year-old married woman and mother of two children, was, about 8:30 o'clock the morning of June 18, 1946, standing on a street corner awaiting a bus to go to the city, where she worked. Appellant drove by and asked her if she wanted to ride with him; she assented and got into the car. She soon saw that, instead of traveling the usual route leading to the city, appellant began to deviate, at which prosecutrix protested all to no avail, asking appellant to let her out of the car and threatening to jump from the car while it was traveling at a high rate of speed. Appellant drove onto a country road and into a wooded section and there, forcibly and against her will, raped her. After the rape had been accomplished and on the way back to the city, appellant, at her request, let her out of the car at a street car stop. As prosecutrix boarded

the street car she asked the motorman to get the license number of the car, as a result of which appellant's arrest was later effected. Prosecutrix immediately went to the office of her family physician, where she communicated to the nurse and, subsequently, the doctor what had happened. Officers were notified.

The foregoing is shown by the testimony of the prosecutrix. The appellant did not testify.

Although the indictment charged rape by force, threats, and fraud, only rape by force was submitted to the jury.

It is insisted that the facts fail to show a case of rape by force, in that the force used was not such as might reasonably be supposed sufficient to overcome resistance.

Touching this particular feature of the evidence, we quote from the testimony of the prosecutrix:

"The first thing that he did, he reached over, he put one arm around my shoulder, and he had this shoulder with his right hand and had the other hand across me like this. He had the other arm across me, holding this arm like that, with one arm around my shoulder. He tried to pull me up close to him. I was still begging him not to do anything, to take me on back to town. He said he wasn't going to take me back to town, that he had me there, and I was what he wanted. He said he was going to get in my pants right then, regardless of what I did. He was trying to get me over close to him. He tried to kiss me, and I kept trying to get away from him, holding back. I wasn't very well at that time, I told him I wasn't. I hadn't been well since my last child was born. That had been about four years at that time. Yes I had been ill for about four years. Now, let me explain that I wasn't ill to the extent where I was in bed. Well, the nature of my illness, it was just a female trouble caused from fallen female organs, that is due to child birth. Yes I had consulted a physician with regard to this illness, from time to time in the past four years. I consulted Dr. Ormsby, who was my physician in delivering my children. He is a witness in this case. It was a two seated car. He next, got *of* the car, pushed me back down on the seat, was pushing me by my shoulders and holding me there, and he was standing just outside the car. I was trying to get away from him. That was my only thought, was getting away, and getting out of sight, getting away from him. I suppose I was too frightened to put up too much resistance. Well, I was just so scared, I didn't know

what I was doing. What did he do next,—that *was* when he raped me."

Upon cross-examination, she testified:

"As to whether I was scuffling with the defendant—I was trying to, to the best of my ability, to get away from him.—I didn't have much strength. Yet I was trying to keep him away from me. . . . . I didn't have strength to do much of anything."

Upon re-direct examination, she testified:

"As to why I did not scratch the defendant—I just simply wasn't able. I didn't have the strength to kick and scratch or fight."

The term "force," as applied to the offense of rape, is defined by Art. 1184, P. C., as follows:

"The definition of 'force' as applicable to assault and battery applies also to rape, and it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

By such definition, the facts of each individual case determine whether force exits, which, of necessity, renders it impossible to lay down a fixed standard by which it may be said that force has or has not been applied, in a rape case.

In the instant case, the trial court properly submitted to the jury the statutory definition of the term "force" and, in connection therewith, instructed the jury that "if you do not beleive beyond a reasonable doubt that she used all the force within her power to resist, taking into consideration the relative size and strength of the parties, together with all other facts and circumstances in the case, you will acquit the defendant."

Under such charge, together with all the facts and circumstances in the case and the appearance and demeanor of the prosecutrix, the jury found appellant guilty, thereby finding that force was exercised.

We cannot say as a matter of law that they were not authorized to so find. We therefore hold the facts sufficient to show that the rape of prosecutrix was accomplished by the use of force.

Appellant, to support his contention that the testimony of prosecutrix fails to show force, relies, with much emphasis, upon the statement contained in 35 Tex. Jur., Rape, Sec. 60, p. 848, wherein it is said:

"A conviction for rape by force is not sustainable unless the evidence shows beyond a reasonable doubt that the prosecutrix did not consent to the act of intercourse and that she put forth every exertion and means within her power to thwart the purpose of her assailant."

Said statement was cited in Phillips v. State, 139 Tex. Cr. R. 574, 141 S. W. (2d) 371.

If we understand appellant's position, it is that the testimony of the prosecutrix fails to show that "she put forth every exertion and means within her power to thwart the purpose of her assailant." In other words, in order for a rape by force to exist, the female must "put forth every exertion and means within her power" to prevent the act of intercourse, thereby giving no effect to that provision of Art. 1184, P. C. which requires only that the force be "such as might reasonably be supposed sufficient to overcome resistance," viewed in the light of the facts and circumstances and the relative strength of the parties. Obviously, therefore, the statement quoted from 35 Tex. Jur., Sec. 60 is too broad, because it eliminates the material element of Art. 1184, P. C. mentioned.

By bills of exception, appellant complains of the receipt in evidence of proof that prosecutrix was the mother of two children.

We note that proof of such fact occurred at three different times; first, when the prosecutrix was being examined touching her life prior to the alleged offense; second, by her family physician, to whom she made the outcry soon after the alleged offense (it was to these the objection was made); third when prosecutrix testified that in her endeavor to get appellant not to assault her she acquainted him with the fact that she was a married woman and the mother of two children.

No objection was registered to this last testimony; hence proof of the same fact to which appellant was objecting was before the jury without objection, thereby nullifying the objections made.

It is contended by appellant that the State's counsel was guilty of improper cross-examination of appellant's wife in that during the cross-examination State's counsel exhibited to the wife, in the jury's presence, what is demonstrated in the case as a "finger print record," by which counsel was endeavoring to get before the jury the fact that appellant had a "finger print record" and had previously been convicted of other crimes. Appellant's objection relative to the interrogation and the exhibition of the record was sustained by the trial court. Thereupon, the jury was withdrawn and the trial court permitted the introduction of testimony touching the matter, in order that appellant might perfect his record. The testimony so introduced is before us in the bill of exception. It is appellant's contention that the bill reflects that the State's counsel, by the mode, manner and method pursued, got before the jury, by inference, the fact that appellant had previously been convicted of an offense and was a criminal, generally, which fact he was precluded from proving, directly.

Of course, State's counsel cannot and should not endeavor to get facts before a jury by inference which are not provable directly. But we are unable to agree with appellant that such is the case here presented. About the most favorable interpretation, from appellant's standpoint, is that the jury received evidence that appellant had been finger-printed by both the State and Federal departments. Such fact does not establish that appellant was an ex-convict or that he had been previously convicted of crime. Fingerprints are a means of identification and for that purpose the citizenship of this country are urged to have a fingerprint record established. We cannot, therefore, bring ourselves to the conclusion that proof of the fact that one has an established fingerprint record is proof of the fact that he is a criminal or has previously been convicted of crime. To accept appellant's contention we would be required to so hold.

Other bills of exception appearing in the record have been examined and are overruled without discussion.

Finding no reversible error, the judgment of the trial court is affirmed.

Opinion approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again asserts that the resistance offered by the prosecuting witness fell short of that required by law, as evidenced by our previous decisions as well as the statute, Art. 1184, P. C. The trial court had this statute in mind when in his charge he applied the law to the facts present, and gave the definition of "force" as set forth in the statute. He also instructed the jury relative thereto that unless they believed beyond a reasonable doubt that the prosecutrix "used all the force within her power to resist, taking into consideration the relative size and strength of the parties, together with all other facts and circumstances in the case, you will acquit the defendant". The relative size and strength of the parties was evident to the jury, both parties being present before them, one being shown by proof to be 27 years of age, the father of a four-year-old child and weighing 150 pounds. The testimony also showed that the lady was 28 years old, and the mother of two children; that for four years since the birth of her last child she had a female trouble caused by childbirth and was under treatment of a physician therefor; that she was sick at the time; that soon after being released by appellant, she was taken to a doctor's office, where she was shown to be very nervous and hysterical. She was a small woman, did not have much strength, and was sick on the day of the alleged occurrence. The jury saw her and were told to take into consideration the relative size and strength of the parties, and they decided under the charge that she used all the force within her power to resist appellant's attack. We think such holding is supported by the evidence.

The motion will be overruled.