RAYMOND KILLINGSWORTH, *alias* BUTCH KILLINGSWORTH V. STATE.

No. 24566. January 25, 1950.

GRAVES, Judge, dissents.

*Thos. W. Thompson,* and *E. T. Simmang, Sr.,* both of Giddings, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

Appellant was convicted of the offense of rape by the use of force, and his punishment was assessed at confinement in the state penitentiary for a term of twenty years.

The only question presented by appellant for review is the

sufficiency of the evidence to sustain his conviction. The testimony adduced upon the trial shows that both the prosecutrix and appellant are Negroes. She was a school teacher and rented a room from appellant and his wife. To secure the money to pay rental due, he took her in a pickup truck to the home of her mother, some 25 or 30 miles away, returning rather late at night. We quote from her testimony as follows: "When we had reached a point about 7 miles from his home, he caught me around the neck like this (indicating) and pulled me over to him. I was sitting in the corner of the truck I said, 'Mr. Killingsworth', and he was still holding my neck, and I kept struggling until I got loose; and I was crying, and he said nobody saw him put his arm around my neck. I told him I knew nobody didn't see it, but it wasn't a matter of what people saw, it was a matter of doing what was right. So, he sat there a little while, as if he was deciding what to do, and I started begging him to take me home, and he said he wouldn't take me on home, he would take me back to town; and, I told him, 'Well, take me back there, then.' So, then he caught me again and I told him I was going to tell Mrs. Killingsworth. He said, 'Well, tell her; she don't believe what anybody tells on me anyway,' and I kept on crying, and then he got out and fastened his door and came around to my door and opened it and then was when he caught me and pushed me up against the truck, with my arm up this way (indicating), and I didn't have any use of this other arm because this one was pushed against the truck. I was using this arm and kicking and hollering, and he said, 'All that crying won't do any good,' and that's when he made his assault; and, then, when he got through, he said, 'You said you was going to tell my wife; now, when you get home, I want you to tell her,' and I didn't answer. He said, 'Are you going to tell her?' I said, 'No, I'm not going to tell her.' When he attacked me, well, he caught me—I had my hand in the way, but he kept on until he pushed my hand out of the way, and while he was there I was raising up trying to get back to the back of the truck, until he stopped. He had intercourse with me; in other words, he finished the job. He got his male organ in my female organ, inside of me. I didn't consent to that. I wasn't doing anything but kicking; it wasn't anything I could do. I was trying to get him off of me; I didn't try to leave the truck because I knew I couldn't. I was doing my best to keep him from having intercourse, and I begged him not to kill me. He said, 'Do you think I would kill you?' I said, 'I don't know what you would do.' Then he went on home to his house."

She further testified that he assisted her in taking her things out of the truck; that she went to her room and he went to his.

She remained in her room for sometime and then left for the purpose of reporting the affair to some neighbors.

Appellant testified, admitting the act of intercourse, but claimed that it was with her consent and without sufficient resistance on her part to comply with the law constituting his act rape. Reliance is had on Article 1184, Vernon's Ann. P. C., defining force as contemplated by Article 1183, P. C., under which the prosecution is brought. From Article 1184, defining force, we quote: "* * * it must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

We also refer to 35 Tex. Jur., page 848, Sec. 60, from which we quote the following: "A conviction for rape by force is not sustainable unless the evidence shows beyond a reasonable doubt that the prosecutrix did not consent to the act of intercourse and that she put forth every exertion and means within her power to thwart the purpose of her assailant."

The prosecutrix gives as her chief reason for yielding to appellant that she was afraid not to. At the same time, she makes it clear that he made no threats. He gave her to understand that he was making none. She said she did kick and holler when he pushed her against the truck, but there is no evidence in the record of any struggle between them other than this. It is clear she could have escaped from the truck while he was walking around from the left to the right side of it. She made no effort to do so. There was no tearing of the clothing nor bruises or marks of violence on her body. There is no evidence of any scratches or bruises, or other indications of a resistance, found on appellant. Her testimony makes a feigned and passive resistance which, in the absence of other circumstances, is insufficient to make a case of rape by force. See Perez v. State, 50 Tex. Cr. R. 34, 94 S. W. 1036, from which we quote: "* * * although some force be used; yet if she does not put forth all the power of resistance which she was capable of exerting under the circumstances it will not be rape."

Under the holdings of our court in many cases the evidence is insufficient to support the conviction and the judgment of the trial court is reversed and the cause is remanded for a new trial.

GRAVES, Judge, (Dissenting).

I am of the opinion that the testimony herein is sufficient

to uphold the verdict of the jury and will give my reasons therefor.

It is shown by the facts that the 23-year old prosecutrix, on the same night of the alleged assault, went to a neighbor's house and told her what had happened; that she then went to the house of Jacob Green, one of the school trustees; and the next morning she went to the doctor and was examined by him.

The doctor testified that he examined this woman on February 11, 1949, and she complained of being raped; that he found a small laceration or tear in the lining of the vagina; that about one and one-half inch into the vagina there was a small hematoma or blood vessel in the vaginal wall on the right side. "As to the cause of that, it looked like there was a penetration of some object or some part of the anatomy into that organ. When I saw her, her pulse was 96; her blood pressure was 130 over 80, and she was in a more or less nervous state. * * * My profession (al) opinion was it was a penis inserted into the vagina (that) caused the laceration, and she was torn. That professional opinion is based on history and what I have found from physical examination. The same bruises could not have been made with the hand. They couldn't be made with the hand; the hematoma was about the size of a good-size marble. If some other object was inserted with the same force, those same bruises could be made. Those bruises were fairly new, because there was blood still coming from the laceration; they were new. The injury had occurred within the last eighteen hours."

Cora Bell Carruthers testified that sometime after midnight the prosecutrix came to her house and told her the story of being raped. She was crying and carrying on, nervous and excited. Cora's husband was one of the trustees. The prosecutrix was on the way to see another trustee, Jacob Green. This witness was a cousin to appellant's wife.

Again, when talking to Sheriff Burttschell, the appellant told him that he had never touched the prosecutrix, and that he did not stop on the way home. When on the stand appellant said that the prosecutrix willingly entered into the matter with him but became angry when he offered to pay her $5.00, she claiming $9.00 therefor, which was the amount owed to appellant's wife for room rent.

If the prosecutrix willingly entered into this agreement, we can see no reason for an outcry, for her story to Cora Bell, for her visit to the school trustees, for her trip to the doctor, and

for the lacerations and blood in her vagina, she being a married woman, nor for the patent lie of appellant when he told the sheriff that he had never touched her.

The prosecutrix was 23 years old, weighed 90 pounds, and was five feet tall. Her husband was in the Army, and she had borne two children, one of them having died. Appellant was 6 feet 2 inches tall and weighed 174 pounds.

I think that while she did not forfeit her life in this resistance, taking into consideration the relative strength of the parties and other circumstances of the case, yet the matter of resistance was righfully presented to the jury and their verdict thereon should not be disturbed.

This prosecutrix made out a clear case of rape, and under a long line of decisions of this court, the jury had the responsibility of either believing same or discarding her story. This jury saw the witnesses, observed their demeanor while on the stand, and returned their verdict. I think they were correct in finding appellant's guilt.

I therefore respectfully dissent.