**Lon A. TORBERT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 29703.

Court of Criminal Appeals of Texas.

April 16, 1958.

Rehearing Denied May 28, 1958.

Dissenting Opinion May 28, 1958.

Power, McDonald & Mell, Alex P. Pope, Tyler, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Presiding Judge.

The offense is rape by force; the punishment, five years.

The sufficiency of the evidence to support the jury's finding that the act was committed by the use of such force "as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case," as defined by Article 1184, Vernon's Ann.P.C., is strenuously challenged and has given this Court deep concern.

Appellant relies upon the rule as set forth in 35 Texas Jurisprudence, section 60, page 848. Attention is directed to the fact that this Court in Bundren v. State, 211 S.W. 2d 197, expressly overruled the rule there set forth and held that the statute alone provided the test. Though this Court did again cite the rule mentioned in Killingsworth v. State, 154 Tex.Cr.R. 223, 226 S. W.2d 456, the Bundren case is not overruled and has been cited with approval in Adair v. State, 155 Tex.Cr.R. 377, 235 S.W. 2d 170, and Weir v. State, 155 Tex.Cr.R. 469, 236 S.W.2d 150.

With this as a background, we now approach a discussion of the facts before us.

Prosecutrix, a 28-year old married woman, testified that on the night in question and while on the way to visit appellant's wife, who was her friend, she saw the appellant, with whom she had attended grade school, at a milk bar in the town of Lindale and stopped and inquired of him if his wife was at home. During this conversation, the appellant asked her if her husband was still working at night, what time he went to work, and what time he got off duty. Upon leaving the milk bar, she proceeded towards the appellant's home approximately five miles from Lindale in a rural section of Smith County in her automobile accompanied by her two daughters, aged 3 and 5. About three-tenths of a mile from appellant's home, she turned off the paved road and onto a side road leading toward appellant's home; shortly after making such turn the appellant overtook her in his station wagon; and a short distance up the road brought it to a halt in a position, according to her testimony, across the road so as to effectively block her passage, but that shortly thereafter his automobile, which was then unattended, rolled away from the center of the road. She stated that he came back to her automobile and entered the same on the right side, the children being in the rear, and pulled her over to him; that she remonstrated with him and asserted her decency and her affection for her husband. She stated that the appellant told her that he had been thinking about *it* since they had been in school together and said "I have got to do it"; that at this juncture the appellant was holding both her arms and said, "All right, if you don't want to do it, I will make you suck it"; that she started to scream, and the appellant caught her by her head, pulled her head across his lap, "and that is when he twisted my head until I was afraid for my life and my children's life." Because of the severity of the pain in her neck, she said "O. K. Lonnie" and he released her and told her to take off her pants and lie down in the front seat of her automobile, which she did, "because he had already twisted my neck until I thought he would kill me if I didn't do what he told me to." Prior to this and while remonstrating with the appellant, she told him, "You are liable to get in trouble over this, don't you know you are liable to make me pregnant," and the appellant replied, "I haven't ever been in any trouble at all to what I am fixing to get into," and said that he would withdraw and not make her pregnant.

During this time and before she assumed the position for intercourse, prosecutrix's children began to cry and said, "What's

the matter, Mommie," and she reassured them that everything was "all right."

We now return to the act of intercourse. Prosecutrix testified that appellant's privates entered hers; appellant's confession recites that "I was having a little trouble getting hard. I had my hand down there trying to get it in and finally got it in a little way." They both agreed that while he was on top of her he cursed because he couldn't "get it hard" and that finally he desisted and that a satisfactory act of intercourse did not take place. After the appellant gave up hope, the parties resumed their seats in the automobile, rearranged their clothing, and at this juncture a third automobile passed where they were parked, but neither of them recognized the occupants of this automobile and the prosecutrix made no outcry. Shortly thereafter, the appellant departed, and the prosecutrix drove immediately to the home of her parents, who resided near Lindale, reported the assault to them, and they then drove to Tyler to prosecutrix's husband's place of employment, and thence to the sheriff's office, and from there to see a physician who examined her, though he was not called as a witness.

Prosecutrix's mother testified that her daughter came to her home and almost hysterically reported what had happened to her and that she then "raised her hair and pulled her collar back and looked at her neck, and it was red—red all over the back of her neck and shoulders."

The appellant was arrested at his home at approximately four o'clock in the morning, was carried to the jail at Tyler, and later in the morning made a confession in writing which recites, "I did this to her without her consent, by the force that I was using on her neck."

Appellant, testifying in his own behalf, denied that the confession was freely and voluntarily made and denied that he ever effected penetration and stated that he was intoxicated. On the issue of force, he gave practically the same version of the trans-

action as had the prosecutrix, except that he denied he had twisted her neck or proposed an unnatural sexual act to her. He stated that she resisted and remonstrated at first but that after he held her tight for a while she submitted. Additional facts will be set forth in our discussion of the law involved.

We now return to the statute set forth in the beginning in order to determine whether the State's case, as made out by the prosecutrix and the appellant's confession, meets its requirements. It is conceded that no force was exerted upon the prosecutrix after she said "O. K. Lonnie" and that she disrobed herself and got in a position for intercourse without any help from the appellant, nor was the appellant armed nor did he make any threats to take prosecutrix's life or that of her children.

These facts, we conclude, are significant:

1. The prosecutrix was five feet tall and weighed 80 pounds. The appellant was 29 years old, six feet tall, and weighed 165 pounds.

2. Prosecutrix testified, and appellant confessed, that he effected penetration and did so by the use of force. These are the two necessary elements of the offense charged. While it is true that at the trial the appellant repudiated his confession, the jury were told in the charge not to consider the same unless they found that it had been voluntarily made.

3. Prosecutrix was accompanied by her two small children, who were crying because of the appellant's assaults upon her. Appellant had announced his intention to have intercourse with her, and any further resistance on the part of the prosecutrix would have resulted in a frightening scene and would have implanted in the minds of her two daughters a horrible incident long to be remembered. Since they were of such immature age, they would not have understood the act of intercourse, and it would soon have been forgotten. Surely, the prosecutrix had the right under these circum-

stances to weigh the effect upon her children in determining whether to resist further.

■ All of the cases relied upon by the appellant were prior to Bundren v. State, supra, and appear to be the source of the rule in Texas Jurisprudence which was held too broad in Bundren, save Killingsworth v. State, 154 Tex.Cr.R. 223, 226 S.W.2d 223. We are at a loss to determine why Bundren was not cited or discussed in Killingsworth but have concluded that the holding in Bundren is sound and should be followed, and that the jury were authorized from the facts here enumerated to find that the force which appellant exerted upon the prosecutrix when he twisted her neck was such "as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case." [211 S.W.2d 198.]

We will now discuss the further contentions advanced by appellant's eminent counsel in brief and argument.

■ By bill of exception, appellant contends that the trial court erred in not permitting him to inquire of the prosecutrix or any other witness whether she was 3½ months pregnant at the time she married her *present* husband. The bill does not recite, and there is no showing in this record, that the child was conceived out of wedlock. For all the bill or this record reveals, the prosecutrix might have been legally married to a former husband at the time of conception, obtained a divorce, or lost her husband through death, and married her *present* husband while pregnant. Before such testimony would be admissible, if at all, it was incumbent upon the appellant to show that the act of intercourse by which she became pregnant occurred while she was not married and was with a man other than the one whom she later married.

■ Appellant next complains that the district attorney was permitted to testify that shortly before the trial the prosecutrix accompanied him to the country lane referred to in the evidence and pointed out to him the spot where the assault took place. The record and the bills as qualified reflect that the trial court withdrew such testimony from the jury's consideration. We have been cited no authority, nor are we aware of any, which would require a reversal where this testimony was withdrawn from the jury's consideration.

■■ Complaint is made as to the admission of the testimony of prosecutrix's mother and father as to the outcry made to them. The record shows that the prosecutrix drove immediately from the scene of the assault to her parent's home within ten minutes. We hold the same to be admissible as outcry and part of the res gestae. Jenkins v. State, 115 Tex.Cr.R. 53, 27 S.W.2d 164. Because of their proximity to the scene of the assault and their relationship to prosecutrix, they were the logical persons to whom she would report the matter. The fact that the prosecutrix's father's account of the outcry was slightly different from that of the prosecutrix would not alone render his testimony inadmissible.

■ By numerous bills, appellant complains that his reputation witnesses were cross-examined about whether they had heard he had been "charged and tried for the offense of rape in Carlsbad, New Mexico, in 1953" when the State's attorney admittedly knew that the appellant had been by the jury acquitted of such charge.

Appellant relies upon Parrish v. State, Tex.Cr.App., 290 S.W.2d 245. A distinction is readily apparent. In Parrish, the question was whether the witness had heard that the accused had been *convicted* when, in fact, at the time he asked the question State's counsel knew that the case in question had been dismissed. Such is not the case here. The question, as shown above, was whether he had been charged and tried, and he had been so *charged and tried,* though not *convicted.* We are at a loss to make a distinction between "specified in-

stances of misconduct," which have not resulted in convictions and which may be inquired about under the rule announced in Adams v. State, 158 Tex.Cr.R. 306, 255 S.W.2d 513, and the cases there cited, and a trial which resulted in an acquittal.

We are not inclined to accept the rule which seems to prevail in Kentucky, and upon which appellant relies, to the effect that a negative answer from the reputation witness requires the court to instruct the jury to disregard the question.

■ We are also inclined to include an arrest "for investigation of a theft" and "for the offense of aggravated assault" within the "specified instances of misconduct" discussed in Adams v. State, supra, and overrule appellant's contentions that reversible error is reflected by the asking of such questions.

■ The last and most novel complaint arose as follows: When the appellant was testifying in his own behalf, he was asked on direct examination "what type of business do you follow?" For some reason undisclosed by this record, the State objected to the question, and the court sustained the objection. Unquestionably, the appellant had the right to tell the jury what he did for a living and would have told them if permitted, as reflected by the bill, that he "generally engaged in farming, hauling truck produce for sale by truck from Tyler to other places and picking up produce and bringing it back to Tyler," but we must determine if the refusal of the court to permit him to so testify resulted in such injury as to call for a reversal of this conviction.

Both the appellant and the State confess that they have been unable to find a case in which the conviction was reversed because the court refused, as he did in the case at bar, to permit the accused to answer the question.

■ Appellant contends that it was important to him to be able to tell the jury that he was a man who was gainfully employed because his reputation witnesses had been asked on cross-examination if they had heard that he had been accused of "specified instances of misconduct" in different counties and states from where he resided. Though appellant's vocation might have explained why he was in the places mentioned, we fail to see how it could have in any way minimized the fact that he had gotten in trouble in those places. The testimony shows that the appellant lived in the same community where he was raised, and there is nothing in the record that would indicate he was a drifter or a person who was not gainfully employed, and we fail to find reversible error in the bill.

As stated originally, the only serious question in the case is whether the evidence shows that the appellant exerted the statutory degree of force in order to achieve his objective. Having concluded that it does, the judgment is affirmed.

On Motion for Rehearing

Rehearing denied.

DAVIDSON, Judge (dissenting).

The majority of the court remain convinced that the appeal was properly disposed of on original submission.

I cannot agree to the affirmance of this conviction under the admissions of the prosecutrix and her testimony as to how this alleged act of rape by force was perpetrated.

This is not a conviction for rape by threats. It is a conviction for rape by force.

The female in a case of rape is not required to resist her attacker to the point of destroying herself, but she must put forth some resistance against such force used by the appellant " 'as might reasonably be supposed sufficient to overcome [her] resistance,' viewed in the light of the facts and circumstances and the relative strength of

the parties." Bundren v. State, Tex.Cr. App., 211 S.W.2d 197, 199.

Under the testimony of the prosecutrix concerning this rape by force, the act of sexual intercourse took place in the front seat of an automobile. At the direction of appellant, she removed her pants and lay down on the seat of the automobile and continued to so lie until the act of intercourse was complete.

There is an entire absence of any evidence of resistance. No effort was made to scratch, strike, scream, or bite the appellant, or to do any other act at her command to resist the assault. Nor is there any evidence showing that the prosecutrix was physically unable to put forth some resistance.

A conviction for rape by force can not be sustained by proof of rape by threats.

I can not bring myself to believe that the testimony, here, evidences any resistance, let alone resistance such as the law requires.

If prosecutrix yielded because of fear or of threats made by the appellant, as she suggests, then the issue was that of rape by threats and not rape by force, and the prosecution should have been for the offense of rape by threats.

I can not bring myself to conclude that the facts, here, authorize this conviction.

I am reminded of what this court said in Green v. State, 97 Tex.Cr.R. 52, 260 S. W. 195, at page 196, a rape case wherein it was held that the facts did not show rape:

"When we read this most remarkable account of how, and the position in which, this alleged forcible act of intercourse took place we recall the words of Horatio, commenting on an incident he did not understand, 'But this is wondrous strange,' and Hamlet's reply, 'There are more things in heaven and earth, Horatio, than are dreamt of in your philosophy.' One test for de-

termining the truth, or otherwise, of evidence is: Does it comport with human experience generally regarding the matter under investigation? By this rule surely prosecutrix's story is, to say the least of it, slightly out of line."

I would reverse the instant conviction for the reason stated herein.

I dissent.