T. R. VESSELS, Appellant,

v.

The STATE of Texas, Appellee.

No. 41019.

Court of Criminal Appeals of Texas.

March 6, 1968.

On Rehearing July 24, 1968.

Rehearing Denied Oct. 23, 1968.

Warren Burnett, Odessa, for appellant.

Bill W. Waters, Dist. Atty., Pampa, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for rape; the punishment, death.

The appellant presents five grounds of error in his brief urging reversal.

In his motion for new trial filed November 8, 1966, appellant alleged in paragraph 7:

"The defendant would show to the court that there has been new testimony material to the defendant's defense which has been discovered since the time of the trial."

In his amended motion for new trial filed December 22, 1966, appellant alleged, in paragraph II:

"That since the Trial of the Defendant was concluded on the 28 day of October, 19 hundred and 66, there has been discovered new evidence which was found to exist through no lack of diligence on the part of the Defendant. Such evidence being that a sample of publc hair taken from the Defendant together with the samples of pubic hair found on the bedspread upon which the alleged rape assertedly occurred were transmitted to the Texas Department of Public Safety Laboratory and the chemist who there made an examination of the same reported to the District Attorney of Gray County that he was unable to identify the pubic hair on the bedspread with that of the suspect, meaning the sample

of pubic hair taken from the Defendant. In this connection, the Court is urged, that such chemist will testify that ordinarily such identification can be made if it in fact exists and such circumstance clearly raises and supports the inference that a person other than the accused Vessels participated in this transaction made the basis of the prosecution herein and that such newly discovered evidence, if presented to a Jury, would likely result in a different result by the way of verdict on the issue of guilt or innocence or alternatively on the quantum of punishment to be assessed."

Ground of error No. 1 set forth in appellant's appellate brief filed in the trial court on July 5, 1967, is:

"The trial court erred in refusing to grant appellant's motion for new trial on the proof of failure of the State to disclose relevant evidence highly beneficial to the accused."

The facts set out in the brief, in support of this ground of error, are that close to the time the dog hair specimens were submitted to the chemist, quantities of pubic hair were taken from the complaining witness and from appellant and were given to the same chemist for a comparison, the comparison desired being one contrasting the identified pubic hair from the victim and appellant with certain pubic hairs found on the top of the bedspread immediately after the crime occurred. The comparison was made and the chemist expressed the opinion that the pubic hairs donated by appellant and the victim were not even similar in appearance to the pubic hair found on the bedspread just after the rapes. The opinion was available to the prosecutor before trial, but was not made known to appellant's court appointed trial lawyer before or during the trial. Based on the comparison, the chemist would have testified that in all reasonable probability the pubic hair found on the bedspread did not come from either of the known donors, appellant and the complaining witness.

Such evidence, the bill contends, goes beyond being beneficial to appellant but weighed in light of logic impels toward the conclusion that some third and unknown person committed the crime.

Citing Ashley v. State of Texas, 5 Cir., 319 F.2d 80, counsel argues in his brief that the state elected to use one scientific hair comparison to aid its case and at the same time failed to disclose the fact of and result of yet another scientific comparison tending to establish (if not in fact doing so) the innocence of appellant.

The ground of error must be appraised in the light of the issues before the court at the hearing which were raised in the motion for new trial and the facts of the case.

This court held, in the recent case of Hobbs v. State, 407 S.W.2d 791, that an exception to the court's action in refusing to grant a new trial on the ground of newly discovered evidence not urged as a ground of error in the defendant's appellate brief was not before this court for review.

It is also the holding of this court that in order to entitle the defendant to a new trial, newly discovered evidence must be such as would likely change the result, if produced at another trial. Bryan v. State, Tex.Cr.App., 406 S.W.2d 210, cert. denied, 386 U.S. 1023, 87 S.Ct. 1378, 18 L.Ed.2d 461; 1 Branch's Ann.P.C. 2d Ed., Sec. 223.

The victim made immediate outcry and was taken to the hospital by a neighbor. She positively identified appellant at the trial as the man who gained entrance to the home she occupied with her husband and their eight months old baby on the pretext that he needed to come in and see if there were any leaks in the gas appliances. She testified that appellant threatened to kill her if she screamed; ravished her twice, stabbed her and robbed her of the seven dollars she had in her purse.

The physician who attended the victim at the hospital testified that she had suffered stab wounds in the abdomen and chest and he described four which his examination revealed were superficial and one deeper stab wound in the upper abdomen which penetrated through the abdominal wall and slightly cut the liver and a blood vessel in the colon. He testified that he accepted her statement that she had been raped as well as stabbed and ran no tests on the secretions from her vagina to determine if there was any sperm there.

In addition to her positive identification of appellant at the trial, the victim had identified appellant in a police lineup and the state offered evidence that dog hair found on his clothing after his arrest was identical with hair of the victim's dog.

It is interesting to note that in his remarks to the jury at the trial on the issue of guilt or innocence, appellant's counsel argued that appellant was not being tried for robbery or for assault, but for rape, and that the only issue the jury had to decide was "was she penetrated by the male organ of Tommy R. Vessels beyond a reasonable doubt," and * * * "I guarantee you he's sorry, he's no good and you will find this out as the case progresses, but I want you to take into consideration only one thing; Did he actually penetrate with his male organ the female organ of (the victim). If he did, why didn't the state come in with the proper corroborative evidence?"

The evidence which counsel complained was missing was blood on the victim's brassiere; an independent determination by the doctor which would have foreclosed doubt "that Vessels, attacker, robber, is also a rapist."

In his argument counsel for appellant also pointed to the absence of any evidence as to fingerprints on the yard gate through which appellant probably entered and of testimony as to any blood on appellant's Levi jacket or his shirt, or in the victim's bedroom.

After the jury had found appellant guilty of rape and had heard the evidence of his prior criminal record, including several felony convictions, appellant's counsel remarked to the jury in his argument: "I concur in your verdict. I think you have done the right thing."

While the state was making out its case in chief and before the chemist testified, Sheriff Jordan testified on cross-examination that the appellant willingly gave him specimens of pubic hair.

The chemist testified that the comparison test was made not later than May 20, 1966.

Soon after appellant's arrest, he willingly furnished the state with specimens of pubic hair from his body. Thus, he was forewarned concerning this phase of the state's investigation.

We do not agree that the report of the chemist was inconsistent with appellant's guilt or that the district attorney conducted his examination of the chemist so as to leave the impression in the minds of the jurors that in fact no human hair report or testimony existed.

A fair inference could be drawn by counsel from the state's failure to prove that hair had been found in the home of the victim which was similar to the hair appellant had furnished—that no such hair had been found.

The chemist was not furnished and did not have a sample of the hair of the husband of the victim with which to compare the hair found on the bedspread.

The trial court did not err in overruling the motion for new trial on the ground of newly discovered evidence.

We do not agree that the record supports appellant's ground of error predicated upon newly discovered evidence that any failure or refusal of the state or its officers to disclose the results of the comparison of pubic hairs denied appellant due process of law. Ground of error No. 1 is overruled.

In appellant's second ground of error he contends that the trial court erred in refusing compulsory process to the appellant in connection with his hearing on motion for new trial.

Even though, the trial court, on December 22, 1966, refused to accord the appellant his rights in connection with a hearing on his motion for a new trial, he notified the appellant on December 27, 1966, that he would grant subpoenas and hear further evidence on the motion for new trial on December 29, 1966.

On December 29, 1966, the judge announced in open court that he did not want to be responsible for not allowing the appellant's witnesses to be subpoenaed, and that appellant could have the witnesses he wanted. The judge further said:

"If we proceed with this hearing, and we don't get through today, we will continue on until we get the witnesses you want in here."

At the time the evidence closed, the following occurred:

"Mr. Burnett: If your Honor please, we have no further evidence to offer at this time.

"The Court: Well, yesterday, I believe I was informed, or I think you and I had a discussion here about getting Dr. Pennal?

"Mr. Burnett: Yes, sir.

"The Court: Did you get him here?

"Mr. Burnett: I have talked with him on the phone. He's quite busy, and I think I would be better advised to not insist on his appearance, so I do not insist on it.

"Mr. Waters: He is under subpoena now?

"Mr. Burnett: He has been served by process this morning in Amarillo.

"The Court: And then, you wanted his mother?

"Mr. Burnett: He would come, but was quite reluctant.

"The Court: Did you get in contact with his mother?

"Mr. Burnett: Mrs. Freeman advised me that she was served this morning, I believe—is that right? She was served with process this morning.

"The Court: Do you want to wait until she comes?

"Mr. Burnett: It's just entirely up to the Court. I make the offer of proof that I made yesterday. I don't know when she would get here, I'll tell the Court in all fairness.

"The Court: Well, as stated to you, we will give you the balance of my time. That's until tomorrow night, to get these witnesses here that you want.

"Mr. Burnett: I have no way of knowing whether she can get here or not.

"The Court: Do you have anything else to say, Mr. Waters?

"Mr. Waters: No, your Honor."

The second ground presented as error is overruled.

It is strenuously insisted in the third ground of error that the entire action of the trial court with reference to the hearing on motion for new trial operated to deprive the appellant of the fair forum to which he was lawfully entitled.

At the hearing on December 22, 1966, the trial judge did not afford the appellant the hearing contemplated and provided by the laws of this state.

The trial judge soon realized his mistakes after the hearings on December 22, and set about to correct them. This was undertaken by the trial judge and is fully shown by our consideration of appellant's ground of error number two.

It is concluded that the trial judge on December 27 and 29, afforded the appel-

lant every opportunity to present and develop any matter at the hearing beginning on December 29, which he desired. The third ground of error is overruled.

Appellant contends, in his ground of error No. 4, that the trial court erred in failing to make counsel available to him at the post-trial stage of the proceedings.

The record reveals that counsel, during the trial, was released immediately after the return of the verdict. Within a few days counsel Comer was appointed, and he ordered the statement of facts and oral argument from the court reporter, and then at his request he was released. About this time, appellant's mother and stepfather told the judge they had employed counsel or were seeking to employ counsel and he gave them until December 15, to employ counsel of their choice. During this time, according to information given the judge, a motion for new trial was prepared by a Fort Worth attorney. A three-page motion for new trial signed by the appellant in person, was filed November 8, 1966, and it appears in the record. On December 14, the judge was contacted and informed by present counsel that he was representing the appellant and he was granted additional time to file amended motion for new trial and a hearing was set for December 22. Since December 15, 1966, present counsel has continued to represent the appellant. This contention is overruled.

The appellant, in his fifth ground of error, insists that the trial court erred in using the alternate procedure in determining his guilt and the punishment to be assessed.

At the close of the evidence in chief for both the state and the appellant, the following occurred:

"Mr. Waters: (In the Absence of the Jury) Judge, at this stage and before the State closes or puts on any evidence in rebuttal, I would like to inquire of Defense Counsel as to whether he and the Defendant elect to have a separate hearing on punishment and

the punishment assessed by the Jury or not.

(Discussion off the record).

(The above and foregoing statement and inquiry of Mr. Waters was read to Mr. Bowers and the Defendant again).

"Mr. Bowers: From the standpoint of counsel, in answer to that question, I will say that I will concur with my client in his wishes, and we do wish a separate hearing to the Jury on punishment, and I concur with his wishes, which I ask him now to state for the record. Restate it, Tom, in your words.

"The Defendant: I believe I would prefer the Jury.

"Mr. Waters: Is it a matter of record that the Defendant is electing that the punishment be assessed by the Jury rather than by the Court, and that the matter of punishment be presented to the Jury by separate hearing?

"The Defendant: Yes, sir.

"Mr. Bowers: Defense counsel concurs.

"Mr. Waters: And that a separate hearing on punishment be held after and in the event the Jury should find a verdict of guilty and a Charge be submitted to them on that issue alone?

"The Defendant: I don't know what he meant.

(Discussion off the record between the Defendant and Mr. Bowers).

"Mr. Bowers: We have got the main predicate laid. I have concurred with him in his desire that the Jury set the penalty. I also concur in the last part of your question.

"Mr. Waters: Your answer is 'Yes, you do so elect'?

"Mr. Bowers: My answer is yes, we do so elect.

(TEN MINUTE RECESS)

"Mr. Waters: (Still in the Absence of the Jury) Now, in addition to that, is it your further understanding and the understanding of the Defendant and the election of the Defendant that upon submitting the matter of punishment for determination by the Jury in a separate hearing, that both sides will be permitted to offer evidence as to the prior criminal record of the Defendant, his general reputation and his character?

(Discussion off the record)

"Mr. Bowers: To that, I answer yes.

"Mr. Waters: And the Defendant does so elect?

"The Defendant: Yes, sir.

"Mr. Waters: The State concurs in the election of the Defendant, such election having been made by the Defendant to have a separate hearing on punishment by the Jury; that the question of guilt or innocence be submitted in a separate Charge first to the Jury for its determination, and in the event of a verdict of guilty by the Jury, that a separate hearing be had before the Jury, at which time both parties may offer evidence as to the prior criminal record of the Defendant as to his general character and reputation, and that the question of punishment be submitted to the Jury in a separate Charge for their determination thereafter."

From the record, it concluded that the appellant waived his right to have the guilt and punishment determined by the jury in one hearing by electing to have the jury assess the punishment. Miller v. State, Tex.Cr.App., 412 S.W.2d 650.

The fifth ground urged as error is overruled.

The judgment is affirmed.

DISSENTING OPINION

MORRISON, Judge.

This is what occurred in the case at bar.

At the time of the trial the State had in its possession a scientific report and expert testimony as to two separate comparisons of hair. The first portion of the report related to the similarity of two sets of dog hair. The results of the comparisons were consistent with guilt and were used to secure appellant's conviction.

The second portion related to the dissimilarity of human hair. This was inconsistent with appellant's guilt. The report was prepared by a scientific expert witness called by the State at appellant's trial.

Of course, the State was not required to offer into evidence as part of their case any evidence which would weaken their case, but this does not mean that they were not bound to make the existence of such testimony known to the defendant, who was unaware of the existence of such a report and the availability of such expert testimony.

During the course of his examination of the scientific expert witness, the prosecutor conducted his examination of the witness so as to leave the impression in the minds of the jury that, in fact, no human hair report or testimony existed. The dog hair was received by the chemist on a certain day, and the human hair was received a short while thereafter. One report covered both sets of hair. When the prosecutor was examining the expert, he specified the date on which the dog hair was received and limited his questions and requested answers to only those items received on that date. He then asked the witness if a search for human hair was made of all items received on that date. The expert limited his answer to only the items received on that date, and testified that he had made such a search and that none was found. No mention of the human hair portion of the report was made at appellant's original trial, and appellant

was deprived of the knowedge of this testimony in the possession of the State which was inconsistent with his guilt.

Because, as I see it, a Federally protected Constitutional right is presented in this case, I must respectfully dissent to this affirmance. As postulated by this case, the right is as follows. Under the Fourteenth Amendment, a prosecutor is under the duty to disclose to an accused, without the necessity of a request, exculpatory evidence which he or the police have in their possession, if such evidence is of a type or from a source which would make it persuasive to a fair minded jury. When he fails to do so, a Constitutionally protected right has been violated, and reversal should follow. Judge Marshall in United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135, traced this Constitutional duty from the time of its establishment up to the time of his opinion. I need elaborate no further.[1]

My Brother ONION joins me in this dissent.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

ONION, Judge.

A further study of the record convinces us that this indigent appellant was denied the effective assistance of counsel to which he was entitled by virtue of the 6th and 14th Amendments to the Federal Constitution. See also Art. I, Sec. 10, Texas Constitution, Vernon's Ann.St.

Courts are reticent to reverse a case for this reason, and often other counsel are reluctant to raise such grounds, but a read-

ing of this record convinces us that this cup cannot be passed from our lips and requires review sua sponte. Article 40.09, Sec. 13, Vernon's Ann.C.C.P.

In addition to the lack of diligence relied upon by the majority in disposing of the suppression of evidence question and the argument of appellant's counsel set out in the opinion of the majority on original submission, there are other factors.

Shortly before trial appellant's appointed counsel, who had attempted to withdraw, offered a motion for change of venue which was denied for lack of the affidavit of two credible persons, residents of the county of the prosecution as required by Article 31.03, V.A.C.C.P. Appellant's counsel then offered to obtain such an affidavit and filed the same, but there is no showing that the same was ever re-presented to the court, but alas, no matter, the original motion was defective as it was sworn to by appellant before his own counsel as notary. See Luttrell v. State, 70 Tex.Cr.R. 183, 157 S. W. 157; Clemons v. State, Tex.Cr.App., 398 S.W.2d 563, Cert. denied, 384 U.S. 1015, 86 S.Ct. 1974, 16 L.Ed.2d 1037, rehearing denied, 385 U.S. 894, 87 S.Ct. 25, 17 L.Ed.2d 128; 16 Tex.Jur.2d., Crim. Law, Sec. 253, pp. 405–407; Cf. Simonds v. State, 76 Tex.Cr.R. 487, 175 S.W. 1064.

 At the time of appellant's trial all capital cases where the State was seeking the death penalty were to be tried at a one stage proceedings, Rojas v. State, Tex.Cr.App., 404 S.W.2d 30; Wilhelm v. State, Tex.Cr.App., 426 S.W.2d 850; Article 37.07, V.A.C.C.P., in effect at time of appellant's trial, providing for the introduction of the defendant's prior criminal record at the penalty stage of a bifurcated

1. The following cases have held that due process is violated where the prosecutor has withheld evidence favorable to the accused. Ashley v. State of Texas, 5 Cir., 319 F.2d 80; Barbee v. Warden, 4 Cir., 331 F.2d 842; United States v. Poole, 7 Cir., 379 F.2d 645; Hamric v. Bailey, D.C., 274 F.Supp. 240; and, of course, United States ex rel. Meers v. Wilkins, 2 Cir., 326 F.2d 135, and cases cited therein. See also 42 Notre Dame Lawyer 264, and 42 N.Y.U.Law Review 764.

trial had no application to capital cases where the death penalty was being sought.[1]

When offered the choice of a one stage proceedings or a bifurcated trial, appellant's counsel permitted him to agree to separate trials. Such agreement permitted the State to offer into evidence 10 prior felony convictions at the hearing on punishment with the appellant offering no evidence. Such prior criminal record was effectively utilized by the District Attorney in his jury argument requesting the imposition of the death penalty.

We observe further that immediately upon receipt of the death verdict, appellant's counsel requested and was permitted to withdraw from the case. Cf. Ex parte Caldwell, Tex.Cr.App., 383 S.W.2d 590.

Subsequently, another attorney was appointed to represent the appellant and while he ordered the record he was allowed to withdraw without ever consulting with the appellant for as the trial judge described it "his wife ran him off the case * * *."

While there is evidence that appellant's family was making some effort to obtain counsel after this time, appellant filed his own motion for new trial, even though the judge had ordered a copy of the Code of Criminal Procedure, which appellant had obtained with the approval of the sheriff, removed from the jail.

Appellant was without counsel until his present appellate counsel hearing of his plight volunteered to represent the appellant at his own expense, and traveled from Odessa to Pampa to do so. His difficulties in securing a hearing on a motion for new trial are described in some measure in the majority's original opinion.

In MacKenna v. Ellis, 280 F.2d 592, the United States Court of Appeals, Fifth Circuit, stated:

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonable effective assistance." See also Fletcher v. State, Tex.Cr.App., 396 S.W. 2d 393.

■ While nothing herein should be interpreted as impugning counsel's honesty and integrity, we cannot conclude in light of the record that the accused has received his constitutional right to effective assistance of counsel which our entire judicial system should always jealously safeguard, even under the test announced in Williams v. Beto, 354 F.2d 698, 704 (5th Cir.).

■ Still another error appears which requires review under Article 40.09, Sec. 13, supra. At the penalty stage of the proceedings the State offered and had admitted into evidence before the jury certified copies of judgments and sentences from ten prior convictions, 8 from Texas, 1 from New Mexico and 1 from the United States District Court, Western District of Texas. Such offer was made over the timely objection that there was no evidence to show that appellant was one and the same person so previously convicted. While such certified copies of the judgments and sentences were clearly admissible if appellant's identity had been established, their mere introduction standing alone was not sufficient to identify the appellant as the person so formerly convicted.. In light of the objection, the State's failure to go

---

1. This Court has held though, in such cases, that an accused pleading not guilty is denied no constitutional or statutory right when, without objection, or at his request, separate trials are had before the same jury on the issues of guilt or innocence and the punishment to be assessed. Williams v. State, Tex.Cr. App., 415 S.W.2d 917; Jones v. State, Tex.Cr.App., 416 S.W.2d 412.

further and show by independent testimony that appellant was the identical person convicted under each of the ten judgments and sentences constitutes reversible error.

It is true that prior to such offer *in the absence of the jury* the State attempted to make such proof before the court.

■ The sheriff of Gray County testified he had received appellant's "prior criminal record" in the mail from the Texas Department of Public Safety coordinated under one number accompanied by a photograph and a set of fingerprints. He was then permitted to state that he had found each of the ten prior convictions included in such record. An examination of such instrument, marked as State's Exhibit No. 8 for identification, reflects that it was not certified or authenticated in any manner so as to authorize its introduction under the provisions of Article 3731a, Vernon's Ann.Civ.St. The set of fingerprints do not reflect when or under what circumstances they were taken.[2] State's Exhibit No. 8 appears to be a "rap sheet" furnished law enforcement officers upon request by the Department of Public Safety. See Article 4413 (14) V.A.C.S.

A fingerprint expert then testified that a set of fingerprints taken from appellant at the Potter County jail matched the fingerprints in State's Exhibit No. 8.

Such proof was not offered before the jury, but even if it had it would not have been sufficient to have shown appellant was the identical person previously convicted under each judgment and sentence introduced.

■ We have consistently held that a prior conviction alleged for enhancement may be established by certified copies of the judgment and sentence and records of the Texas Department of Corrections including fingerprints of the defendant, supported by expert testimony identifying them as identical with known prints of the defendant. See 1 Branch's Anno.P.C., Sec. 699, p. 684.

Such procedure was authorized because it complied with the provisions of Article 3731a, supra. See Spencer v. State, 164 Tex.Cr.R. 464, 300 S.W.2d 950.

We know of no reason why the same rule would not apply whether the State was seeking to prove a prior criminal record under the provisions of Article 37.07, V.A. C.C.P., or whether it was attempting to prove a prior conviction alleged for enhancement of punishment or for jurisdictional purposes.

Judge Morrison and this writer remain convinced that reversal is also called for as the result of the suppression of evidence. Further, we do not feel the issue can be disposed of within the framework of conventional "newly discovered evidence" concepts. Hamric v. Bailey, 4th Cir., 386 F.2d 390; Cf. Jackson v. Wainwright, 5th Cir., 390 F.2d 288. The majority, however, has concluded that particular ground does not reflect reversible error.

Appellant's motion for rehearing is granted, the judgment of affirmance is set aside, and the cause reversed and remanded.

---

2. Observe that "fingerprints" are a means of identification, and proof that one has an established fingerprint record is not proof that he is a criminal or that he has previously been convicted of crime. Bundren v. State, 152 Tex.Cr.R. 45, 211 S.W. 2d 197.