**Dennis BECK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54978.**

Court of Criminal Appeals of Texas, Panel No. 1.

Nov. 1, 1978.

Appellants' Motion for Rehearing En Banc Denied Dec. 13, 1978.

Fred L. Nix, Longview, for appellant.

Odis R. Hill, Dist. Atty. and Nathan M. Holt, Asst. Dist. Atty., Longview, for the State.

Before ODOM, VOLLERS and W. C. DA-VIS, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for murder. Punishment was assessed by the

jury at seventy years' imprisonment. The sufficiency of the evidence is not challenged.

Appellant raises two grounds of error. First, he complains of the trial court permitting the District Attorney on cross examination to impeach one of his character witnesses with the question, "Have you heard that Dennis Beck was charged and tried of assault with intent to murder?" To which the witness answered, "Yes". Appellant contends that the question was asked in bad faith because (1) the prosecutor was aware of the fact that the appellant had been acquitted of the offense inquired about, and (2) that of eight character witnesses called by appellant, the question was asked of only one of them. The character witness of whom the question was asked had testified that appellant's general reputation in the community for being a peaceful and law abiding citizen was good.

■■■■■ There is no showing in the record that the prosecutor was aware that the appellant had been acquitted of the offense about which the witness was asked. It is well established that this court cannot accept as fact allegations or assertions in an appellant's brief which are not supported by the record. See *Holcomb v. State*, 523 S.W.2d 661 (Tex.Cr.App.1975). However, if the prosecutor had been aware of the acquittal, such would not have made the question inadmissible. *Torbert v. State*, 166 Tex.Cr.R. 311, 313 S.W.2d 303 (1958). Appellant's first ground of error is overruled.

Appellant's second ground of error complains that the trial court abused its discretion in overruling his amended motion for new trial based upon allegations of jury misconduct. The only testimony adduced at the hearing on the amended motion for new trial was by one of the jurors, Judy Richardson, who was called by the appellant. The State did not call any witnesses. In connection with discussion by the jury of the parole law, Richardson testified as follows:

"Q. In addition, in the questionnaire that I mailed to you and that you returned to me, did you—were you further asked whether or not the jury discussed the length of time the Defendant would have to spend in the penitentiary before he was paroled, or released from confinement?

"A. Some of the people repeatedly brought this up, even when the Foreman asked them not to; they would quit and then it would be brought back up again at another time.

"Q. Would you say that it was brought up on one or two times, or on many occasions, during the jury deliberations?

"A. No, it was brought up several; it was brought up more than twice.

"Q. Did anyone in particular make specific references with regard to how long the Defendant would have to serve if imposed a certain length of sentence?

"A. Well, Mr. Dudley was talking about the fact that he did know something, like if you were given a ninety-nine year sentence for the crime, you would have to serve like a third of it, and then I honestly don't remember who, but somebody said—I remember something being said about, well, like a thirty or twenty year sentence, how long—it was said, mentioned how long—in that persons' opinion how long the Defendant would have to serve his time.

"Q. Did they further state that if a person received a twenty or thirty year sentence that the Defendant could get out of jail in seven years, and then someone else responded and said, no, it will be less than that, like four or five years?

"A. Well, the way that came up, somebody said, well, they will have to serve at least seven or ten years, and somebody said, no, it was less, and somebody said no it's more.

"Q. But somebody did make the statement then on a twenty or thirty sentence —?

"A. Yes, sir. Right.

"Q. —that he probably would not have to serve but maybe four or five years, is this correct?

"A. Yes, statements were made to that effect."

Richardson further testified that the subject of parole was brought up six or seven times; that the Foreman and other members of the jury admonished the others that they were not to consider parole; that she understood that parole was in the exclusive jurisdiction of the Board of Pardons and Paroles and she assumed that the others did.

Article 40.03, V.A.C.C.P., provides in part:

"New trials, in cases of felony, shall be granted the defendant for the following causes,

" * * *

"(7) Where the jury, after having retired to deliberate upon a case, has received other evidence; . . .

"(8) Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial . . . "

In *Heredia v. State*, 528 S.W.2d 847 (Tex. Cr.App.1975), in considering these two sections, we held that either principle, i. e., receipt of other evidence or misconduct of the jury could be relied upon, in the proper case, to require reversal for the jury's discussion of the parole law during its deliberations. As to Section 7, we held:

"We adhere to those pronouncements in prior decisions that it is common knowledge that from time to time inmates of the Texas Department of Corrections are released on parole. (cases cited omitted) Consequently, the mere mention of this common knowledge would not constitute the receipt of other evidence, nor would a further discussion of it constitute receiving new evidence any more than discussion of any other matter of common knowledge by the jury.

" . . . a misstatement of the law, by being incorrect, would constitute other evidence, since by being false it certainly could not be classified as 'common knowledge'. (cases cited omitted) The receipt of such other evidence, even if nothing further be shown as would constitute misconduct requiring a new trial under Section 8, on a proper set of facts could require reversal under Section 7."

As to the applicability of Section 8 of Article 40.03, supra, we held:

"Distinct from the receipt of new evidence, discussion of the parole law, although common knowledge, would in every case constitute jury misconduct since the parole law is not for the jury's consideration. But not all such misconduct necessarily denies the defendant a fair and impartial trial, and it is that standard which determines whether a new trial is required for misconduct under Section 8 of Article 40.03, supra."

Thus, a misstatement of the law was held in *Sweed v. State*, 538 S.W.2d 119 (Tex.Cr. App.1976) to constitute other testimony as defined in Subdivision 7 of Article 40.03, supra. In *Martinez v. State*, 533 S.W.2d 20 (Tex.Cr.App.1976), a correct statement of the probation law discussed by the jury did not constitute such other testimony as to require reversal.

In *Ashabranner v. State*, 557 S.W.2d 774 (Tex.Cr.App.1977) we added to the "misstatement of the law" principle that the juror making the statement "did profess to know the law." This was previously set out in *Powell v. State*, 502 S.W.2d 705 (Tex.Cr. App.1974). In *Ashabranner v. State*, supra, the alleged jury misconduct was as follows: "We then deliberated the punishment to be given the Defendant. I was originally for around a ten year or greater sentence. One of the other male jurors, who was a hardliner for 20 years from the beginning, said, 'If we give him a light ten year sentence, he'll be out in 2 or 3 years.' I then went up to fifteen years, and one of the '20 year-people' talked about parole, and the fact that defendants never serve out their full term." In affirming this conviction, we held: "While it appears from the affidavit that one of the jurors expressed his opinion as to when appellant might be released, he did not profess to know the law and did not misstate the law."

In *McIlveen v. State*, 559 S.W.2d 815, (Tex.Cr.App.1977) the following assertions were made in the jury room during the

deliberations on punishment: that if the jury gave appellant two years, he would be out in one year; that if the jury gave appellant ten years he would be free in eighteen months; and that if the jury gave appellant fifteen years he would be free in seven years. In affirming the conviction, we held: "In the instant case, the evidence is not sufficient to show that any juror relied on or was influenced by the comments in the jury room to the appellant's detriment." After setting out the testimony of one of the jurors, we concluded: "While this testimony showed that the jury assessed fifteen years, it does not reveal that the statement was the cause of the assessment. In fact, Glazner (the juror) specifically testified that this was part of a discussion and that 'no one still knew the law'. We have reviewed the record of the hearing on the motion for new trial and do not find any juror who testified that his or her vote was changed as a result of the discussion."

And in the very recent decision in this court in *Carrillo v. State*, 566 S.W.2d 902 (Tex.Cr.App.1978) the testimony of one of the jurors was to the effect that she wanted to give fewer years than the punishment advocated by other jurors but it was explained to her by the foreman that if appellant behaved well in the penitentiary he would get out sooner. Based on this, she testified that she changed her mind about what was proper punishment. In holding this harmless error, we said: "The evidence shows at best that the jurors mentioned that which is common knowledge about the law of parole; i. e., some inmates of the Texas Department of Corrections are released prior to serving their full term, especially if they behave well in the penitentiary. No juror professed to know the law of parole and none misstated the law to the others."

■ In the case at hand, it is undisputed that how long the appellant would have to serve in the penitentiary was discussed. Under the cases above cited, in order for this to constitute "other testimony", the statements must have been made (1) by someone who professed to know the law, and (2) were misstatements of the law. Juror Richardson testified at the motion for new trial unequivocally "There was nobody that actually knew the law, just a lot of speculation." Clearly none of the jurors professed to know the law of parole.

■ The improper statements of the jurors will next be looked to for determination of whether they were "misstatements of the law". The statements made were testified to by Richardson as follows: (1) "if you were given a ninety-nine year sentence . . . you would have to serve like a third of it". (2) "on a twenty or thirty year sentence, that he would not have to serve but maybe four or five years."

Article 42.12, Section 15(a), V.A.C.C.P., provides that an inmate may be released who has served one-third of the maximum sentence imposed.

Article 6181-1, V.A.C.S., provides that an inmate may earn good conduct time as follows:

"Sec. 3. (a) Inmates shall accrue good conduct time based upon their classification as follows:

"(1) 20 days for each 30 days actually served while the inmate is classified as a Class I inmate;

"(2) 10 days for each 30 days actually served while the inmate is classified as a Class II inmate; and

"(3) 10 additional days for each 30 days actually served if the inmate is a trusty."

Thus, on a twenty year sentence, a Class I inmate would be eligible for parole in four years and a trusty in three years and four months. On a thirty year sentence, a Class I inmate would be eligible in 6 years and a trusty in five years. Thus it appears the statements made in this case were not misstatements of the law and the jury was not misled thereby. Such therefore does not constitute receipt of "other evidence".

We next turn to the consideration of whether the mentioning of parole, which we have held under Section 8 of Article 40.03, supra, to be misconduct, was such as denied

the appellant a fair and impartial trial. Richardson's testimony on this was as follows:

"Q. Do you feel that because of the discussions on the length of time the Defendant would have to serve in the penitentiary before he would be paroled or be released from confinement; do you feel that this caused the imposition of a more severe punishment in this case than would have been imposed had these discussions not taken place, or not discussed in the length that they were discussed?

"A. Maybe if they hadn't been discussed in the length that they were discussed.

"Q. In other words, if they would have been brought up and then shut off at that time, then you are saying that it would not have had a bearing on the length of the sentence?

"A. Right. I don't think it would have if it hadn't kept coming up.

"Q. Would you say that some of the remarks were relied upon by you yourself and some of the other jurors in the imposition of the punishment?

"A. I don't know about the other jurors; I didn't consciously rely upon them. I do know I heard it and I did listen to it.

"Q. Do you think this had a bearing in the imposition of the punishment that you assessed in this case?

"A. Well, I really honestly don't know. I know I did listen to it myself, and it could have had a bearing on it."

Although it is obvious that the jury improperly discussed the parole law, we are unable to say that Richardson or any other juror changed his or her vote as a result of the discussion. Her testimony is conflicting and she could only speculate whether the discussion affected the other jurors. She was sure that she herself had not consciously relied upon the discussions.

 It is well settled that issues of fact as to jury misconduct raised at a hearing on motion for new trial are for the determination of the trial judge. *McCartney v. State*, 542 S.W.2d 156 (Tex.Cr.App.1976) and cases cited therein. The court's decision will not be reversed unless an abuse of discretion is shown. *Appleman v. State*, 531 S.W.2d 806 (Tex.Cr.App.1976) The trial judge, having the right to accept or reject any part of her testimony, obviously accepted Richardson's statements that she did not know about the other jurors but that the discussion about parole did not influence her. We are unable to say that the trial judge abused his discretion in overruling appellant's motion for new trial. Appellant's second ground of error is overruled.

Finding no reversible error, the judgment is affirmed.

ODOM, Judge, dissenting.

The majority make a shambles of the law on jury misconduct by reintroducing in the jurisprudence of this State the conflicting and complex petty considerations that should have no effect on the outcome.

Two striking examples of such irrelevant considerations injected by the majority are their consideration of the mental processes of the individual jurors and consideration of whether someone professed to know the law. The issue is what went on in the jury room, not what went on in the jurors' heads. And wild speculation is just as harmful regardless of whether anyone professes to know whether those speculations are law or not.

It is clear from the testimony of the one juror who testified at the hearing that misconduct permeated the deliberations on punishment. The State failed to call other jurors and make a fact issue. It is sheer fiction for the majority to conjure up a supposed "fact issue" where the State neglected to make one.

I vigorously dissent.