

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-10-00468-CR

ANGEL RENEE NORRIS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Angel Renee Norris appeals her conviction for assault causing bodily injury to a public servant.[2] In two points, Norris contends that the trial court erred by overruling her objection to four of the State's exhibits that demonstrate Norris's previous felony convictions, and Norris argues that trial

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.01(b)(1) (West 2011).

counsel rendered ineffective assistance of counsel at the guilt-innocence phase of trial.  We will affirm.

## II.  BACKGROUND

Officer Rusty Wingate performed a "jail check" at the Tarrant County jail on May 10, 2009.  There he encountered Norris in her cell.  Norris told Wingate that she had information pertaining to a stolen computer and that she wanted to speak with a detective and make a call about it.  Wingate obliged and opened the cell door, letting Norris sit at a booking desk to use the phone.  Wingate dialed a number given to him by Norris.  By Wingate's account, Norris spoke on the phone for a few minutes, but her conversation had nothing to do with a stolen computer; rather, her conversation pertained to why she was still in jail.  After she claimed that she had reached the wrong person in that phone call, Wingate allowed Norris to make another.  The second call was brief.  Wingate allowed a third call.  Wingate surmised that the third phone call was to a bail-bond company.  At this point, Wingate believed that Norris's claim of knowing about a stolen computer was simply a ruse, and he refused Norris's request to make a fourth call.

Wingate opened the door for Norris to come out.  Norris responded by grabbing the booking desk with both hands, refusing to let go, and insisting that she was not going back into her cell.  Wingate then instructed Norris to exit the booking area and return to her cell.  Wingate attempted to grab Norris by the shoulders in an effort to "herd" her back to her cell.  Norris threw herself to the

2

ground. While lying on her back, Norris hurled obscenities at Wingate. As Wingate attempted to remove Norris from the area, Norris kicked Wingate several times in his chest, stomach, and legs. Norris, still lying on the floor, reached behind her, picked up a chair, and threw it at Wingate's face. Wingate blocked the chair, but jammed his finger in the process. Norris then kicked Wingate in the groin at least three times. Wingate believed that his finger was broken, although he described the pain from her kicks to his groin as the most painful aspect of the incident.

In his efforts to subdue Norris, Wingate warned her that he would tase her if she did not cooperate. Norris responded by yelling, "Tase me, tase me, I'm pregnant." Fearing that she was telling the truth, Wingate did not tase Norris. Instead, he eventually dragged Norris to her cell, released her there, and quickly ran out of the cell, shutting the door behind him.

A jury convicted Norris of assault on a public servant and assessed punishment at four and one-half years' confinement. Represented by new counsel, Norris filed a motion for new trial, asserting that her trial counsel had been ineffective for failing to investigate and present evidence of a variety of alleged mental illnesses. The trial court held a hearing, and Norris called local criminal defense attorney, Stephanie Patten, to testify. Patten reviewed Norris's mental health records and surmised that Norris's trial counsel had failed to adequately investigate Norris's mental health history. She also stated that trial counsel's failure to do so constituted substandard representation. Trial counsel

also testified that he never reviewed Norris's mental health records. But he also testified that had he done so, his trial strategy would not have changed. The trial court granted Norris' motion for new trial as to punishment only.

At the new punishment trial, conducted before the bench, Norris presented evidence of her mental health records. She also presented testimony by a forensic psychologist who had examined both Norris and her mental health records. The State presented evidence of Norris's previous felony convictions. Norris objected to the admission of State's exhibits ten, eleven, twelve, and thirteen on grounds that these judgments were not properly authenticated because the thumb prints contained on the convictions were not compared to known samples of Norris's prints.

The State questioned Deputy John Pauley of the Tarrant County Sheriff's Office's error resolution department. Pauley testified that the prints on State's exhibit thirteen were comparable to a known sample of Norris's prints. Pauley also testified that the name, county identification number, and date of birth on State's exhibits ten, eleven, and twelve were consistent with the name, county identification number, and date of birth on other conviction sheets that contained the same information plus fingerprints that matched Norris's. The trial court overruled Norris's objections.

At the close of the hearing, the trial court sentenced Norris to four and one-half years' confinement. This appeal followed.

## III. DISCUSSION

### A.      State's Exhibits Ten, Eleven, Twelve, and Thirteen

In her first point, Norris contends that the trial court abused its discretion by admitting State's exhibits ten, eleven, twelve, and thirteen at the punishment hearing. Norris argues that the State failed to properly identify her as the person named on these conviction records. We disagree.

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Beck v. State*, 719 S.W.2d 205, 210 (Tex. Crim. App. 1986) ("It is incumbent on the State to go forward and show by independent evidence that the defendant is the person so previously convicted."); *see also Timberlake v. State*, 711 S.W.2d 50, 52 (Tex. Crim. App. 1986) ("[T]he facts of each case must contain reliable evidence showing that the defendant had been previously convicted of the offense for which evidence is offered."). These two elements may be established by certified copies of a judgment and a sentence, including fingerprints supported by expert testimony identifying them as identical with known prints of the defendant. *See Vessels v. State*, 432 S.W.2d 108, 117 (Tex. Crim. App. 1968). There is no required "mode of proof," however, for the two elements; the State may prove them in a number of different ways. *Flowers*, 220 S.W.3d at 921–22 ("Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction."). In proving the elements, the

5

State may use "[a]ny type of evidence, documentary or testimonial." *Id.* at 922; *see Human v. State*, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988). Finally, the factfinder looks at the totality of the admitted evidence to determine whether there was a previous conviction and whether the defendant was the person convicted. *Flowers*, 220 S.W.3d at 923.

As to State's exhibits ten, eleven, and twelve, Pauley testified that the same county identification number, the same date of birth, and the same full name were comparable to other Norris convictions that contained the same information plus validated fingerprints that matched Norris's fingerprints. We conclude and hold that the trial court could have concluded beyond a reasonable doubt that the county identification number, date of birth, and name sufficiently linked Norris to the existing convictions admitted in evidence. *See Goode v. State*, No. 02–10–00465–CR, 2011 WL 4502333, at *1–2 (Tex. App.—Fort Worth Sept. 29, 2011, pet. ref'd) (mem. op., not designated for publication) ("Given that appellant's unique, nonrecycled CID appeared in relation to two Tarrant County convictions concerning a defendant with appellant's full name and birth date, we hold that a rational trier of fact could have found the evidence sufficient to link appellant to the two prior judgments submitted by the State."). We overrule this portion of Norris's first point.

As to State's exhibit thirteen, despite Norris's assertion in her brief that "Pauley conceded that he did not compare a fingerprint from State's Exhibit [thirteen] to . . . Norris's known print," the record reveals that Pauley specifically

6

testified that the fingerprints on State's exhibit thirteen were comparable to previous known prints. He also said that the other information on State's exhibit thirteen was identical to the information contained on the previously confirmed convictions. *See Ortiz v. State*, No. 02-07-00397-CR, 2008 WL 4602243, at *2 (Tex. App.—Fort Worth Oct. 16, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that State sufficiently linked defendant to prior conviction when his fingerprints matched those on jail card, which contained same CID number as that on indictment, although judgment did not contain CID number). We overrule the remaining portion of Norris's first point.

## B.    Effectiveness of Counsel

In her second point, Norris argues that the trial court abused its discretion by overruling her motion for new trial as to the guilt-innocent phase of trial. Norris argues that she received ineffective assistance of counsel because trial counsel failed to "fully investigate mental health issues in this case." The State argues, among other things, that Norris has failed to demonstrate that the outcome of the trial would have been different but for trial counsel's alleged errors. We agree with the State.

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that her counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have

7

been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065.

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Id.*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

There is no requirement that we approach the two-pronged inquiry of *Strickland* in any particular order, or even that we address both components of the inquiry if the defendant makes an insufficient showing on one component. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069.

8

In this case, we will assume without deciding that trial counsel failed under the first prong of *Strickland* when he failed to investigate issues of Norris's mental health. Indeed, the trial court determined that trial counsel's assistance fell below prevailing professional norms in light of the circumstances of Norris's having a lengthy history of mental health issues and trial counsel's admittedly failing to investigate that history. In fact, the trial court granted Norris's motion for new trial as to punishment.

But there was no evidence offered at the hearing on the motion for new trial that any physician or social worker would have testified that, due to Norris's mental health issues, the *mens rea* element to commit the crime of which she was convicted, assault causing bodily injury to a public servant, was somehow negated.[3] *See Ruffin v. State*, 270 S.W.3d 586, 588 (Tex. Crim. App. 2008) ("[T]estimony of a mental disease or defect that directly rebuts the particular *mens rea* necessary for the charged offense is relevant and admissible unless excluded under a specific evidentiary rule.").

---

[3]There was evidence presented at the second punishment hearing that Norris suffered from a number of mental health issues, including: poor impulse control, posttraumatic stress disorder, recurrent depressive disorder, amphetamine dependence, and borderline personality disorder. But there was no evidence presented at any phase of trial to show how Norris's mental health issues might have been offered to rebut or negate that she possessed the specific intent to assault Wingate. *See* Tex. Penal Code Ann. § 22.01(a)(1) (West 2011) ("A person commits an offense if the person . . . intentionally, knowingly, or recklessly causes bodily injury."); *see also Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005) ("As with the other elements of the offense, relevant evidence may be presented which the jury may consider to negate the *mens rea* element.").

The record does not demonstrate how trial counsel's not having investigated Norris's mental health issues undermines confidence in the jury's verdict of guilty.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  Norris does not even analyze in her brief how the second prong of *Strickland* is satisfied, stating only in one short paragraph that due to trial counsel's failure to investigate Norris's "diminished capacity,[4] [Norris] has been foreclosed from showing that she did not possess the requisite mens rea."  In short, Norris has failed to show that there is a reasonable probability that, but for counsel's failure to investigate her mental health history, the result of the proceeding would have been different.  *See Conrad v. State*, 77 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding that even though appellant satisfied *Strickland's* first prong by proving counsel failed to investigate evidence of mental insanity, his ineffective assistance claim failed because he did not present sufficient evidence at motion-for-new-trial hearing to show outcome of trial would have been different).  We overrule Norris's second point.

---

[4]We note that "The court of criminal appeals has consistently reasoned that Texas does not recognize diminished capacity as an affirmative defense." *See Acevedo v. State*, No. 02-10-00187-CR, 2011 WL 567630, at *1 (Tex. App.—Fort Worth Nov. 17, 2011, pet. ref'd).

## IV. Conclusion

Having overruled both of Norris's points, we affirm the trial court's judgment.

                                        BILL MEIER
                                        JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 14, 2012