02-10-468-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-10-00468-CR

 

 


 
 
 Angel Renee Norris
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM Criminal
District Court No. 1 OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

Appellant
Angel Renee Norris appeals her conviction for assault causing bodily injury to
a public servant.[2]  In two points, Norris
contends that the trial court erred by overruling her objection to four of the
State’s exhibits that demonstrate Norris’s previous felony convictions, and
Norris argues that trial counsel rendered ineffective assistance of counsel at
the guilt-innocence phase of trial.  We will affirm.

II.  Background

Officer
Rusty Wingate performed a “jail check” at the Tarrant County jail on May 10,
2009.  There he encountered Norris in her cell.  Norris told Wingate that she
had information pertaining to a stolen computer and that she wanted to speak
with a detective and make a call about it.  Wingate obliged and opened the cell
door, letting Norris sit at a booking desk to use the phone.  Wingate dialed a
number given to him by Norris.  By Wingate’s account, Norris spoke on the phone
for a few minutes, but her conversation had nothing to do with a stolen
computer; rather, her conversation pertained to why she was still in jail. 
After she claimed that she had reached the wrong person in that phone call,
Wingate allowed Norris to make another.  The second call was brief.  Wingate
allowed a third call.  Wingate surmised that the third phone call was to a bail-bond
company.  At this point, Wingate believed that Norris’s claim of knowing about
a stolen computer was simply a ruse, and he refused Norris’s request to make a
fourth call.

Wingate
opened the door for Norris to come out.  Norris responded by grabbing the
booking desk with both hands, refusing to let go, and insisting that she was
not going back into her cell.  Wingate then instructed Norris to exit the
booking area and return to her cell.  Wingate attempted to grab Norris by the
shoulders in an effort to “herd” her back to her cell.  Norris threw herself to
the ground.  While lying on her back, Norris hurled obscenities at Wingate.  As
Wingate attempted to remove Norris from the area, Norris kicked Wingate several
times in his chest, stomach, and legs.  Norris, still lying on the floor,
reached behind her, picked up a chair, and threw it at Wingate’s face.  Wingate
blocked the chair, but jammed his finger in the process.  Norris then kicked
Wingate in the groin at least three times.  Wingate believed that his finger
was broken, although he described the pain from her kicks to his groin as the
most painful aspect of the incident.

In
his efforts to subdue Norris, Wingate warned her that he would tase her if she
did not cooperate.  Norris responded by yelling, “Tase me, tase me, I’m
pregnant.”  Fearing that she was telling the truth, Wingate did not tase
Norris.  Instead, he eventually dragged Norris to her cell, released her there,
and quickly ran out of the cell, shutting the door behind him.

A
jury convicted Norris of assault on a public servant and assessed punishment at
four and one-half years’ confinement.  Represented by new counsel, Norris filed
a motion for new trial, asserting that her trial counsel had been ineffective
for failing to investigate and present evidence of a variety of alleged mental
illnesses.  The trial court held a hearing, and Norris called local criminal
defense attorney, Stephanie Patten, to testify.  Patten reviewed Norris’s
mental health records and surmised that Norris’s trial counsel had failed to
adequately investigate Norris’s mental health history.  She also stated that
trial counsel’s failure to do so constituted substandard representation.  Trial
counsel also testified that he never reviewed Norris’s mental health records. 
But he also testified that had he done so, his trial strategy would not have
changed.  The trial court granted Norris’ motion for new trial as to punishment
only.

At
the new punishment trial, conducted before the bench, Norris presented evidence
of her mental health records.  She also presented testimony by a forensic
psychologist who had examined both Norris and her mental health records.  The
State presented evidence of Norris’s previous felony convictions.  Norris
objected to the admission of State’s exhibits ten, eleven, twelve, and thirteen
on grounds that these judgments were not properly authenticated because the
thumb prints contained on the convictions were not compared to known samples of
Norris’s prints.

The
State questioned Deputy John Pauley of the Tarrant County Sheriff’s Office’s
error resolution department.  Pauley testified that the prints on State’s
exhibit thirteen were comparable to a known sample of Norris’s prints.  Pauley
also testified that the name, county identification number, and date of birth
on State’s exhibits ten, eleven, and twelve were consistent with the name,
county identification number, and date of birth on other conviction sheets that
contained the same information plus fingerprints that matched Norris’s.  The
trial court overruled Norris’s objections.

At
the close of the hearing, the trial court sentenced Norris to four and one-half
years’ confinement.  This appeal followed.

III.  Discussion

A.      State’s Exhibits Ten, Eleven, Twelve,
and Thirteen

In her first point, Norris contends that the
trial court abused its discretion by admitting State’s exhibits ten, eleven,
twelve, and thirteen at the punishment hearing.  Norris argues that the State
failed to properly identify her as the person named on these conviction
records.  We disagree.

To
establish that a defendant has been convicted of a prior offense, the State
must prove beyond a reasonable doubt that (1) a prior conviction exists,
and (2) the defendant is linked to that conviction.  Flowers v. State,
220 S.W.3d 919, 921 (Tex. Crim. App. 2007); Beck v. State, 719 S.W.2d
205, 210 (Tex. Crim. App. 1986) (“It is incumbent on the State to go forward
and show by independent evidence that the defendant is the person so previously
convicted.”); see also Timberlake v. State, 711 S.W.2d 50, 52 (Tex. Crim.
App. 1986) (“[T]he facts of each case must contain reliable evidence showing
that the defendant had been previously convicted of the offense for which
evidence is offered.”).  These two elements may be established by certified
copies of a judgment and a sentence, including fingerprints supported by expert
testimony identifying them as identical with known prints of the defendant.  See
Vessels v. State, 432 S.W.2d 108, 117 (Tex. Crim. App. 1968).  There is no
required “mode of proof,” however, for the two elements; the State may prove
them in a number of different ways.  Flowers, 220 S.W.3d at 921–22
(“Just as there is more than one way to skin a cat, there is more than one way
to prove a prior conviction.”).  In proving the elements, the State may use
“[a]ny type of evidence, documentary or testimonial.”  Id. at 922; see
Human v. State, 749 S.W.2d 832, 836 (Tex. Crim. App. 1988).  Finally, the
factfinder looks at the totality of the admitted evidence to determine whether
there was a previous conviction and whether the defendant was the person
convicted.  Flowers, 220 S.W.3d at 923.

As
to State’s exhibits ten, eleven, and twelve, Pauley testified that the same
county identification number, the same date of birth, and the same full name
were comparable to other Norris convictions that contained the same information
plus validated fingerprints that matched Norris’s fingerprints.  We conclude
and hold that the trial court could have concluded beyond a reasonable doubt
that the county identification number, date of birth, and name sufficiently
linked Norris to the existing convictions admitted in evidence.  See Goode
v. State, No. 02–10–00465–CR, 2011 WL 4502333, at *1–2 (Tex. App.—Fort
Worth Sept. 29, 2011, pet. ref’d) (mem. op., not designated for
publication) (“Given that appellant’s unique, nonrecycled CID appeared in
relation to two Tarrant County convictions concerning a defendant with
appellant’s full name and birth date, we hold that a rational trier of fact
could have found the evidence sufficient to link appellant to the two prior
judgments submitted by the State.”).  We overrule this portion of Norris’s
first point.

As
to State’s exhibit thirteen, despite Norris’s assertion in her brief that
“Pauley conceded that he did not compare a fingerprint from State’s Exhibit
[thirteen] to . . . Norris’s known print,” the record
reveals that Pauley specifically testified that the fingerprints on State’s
exhibit thirteen were comparable to previous known prints.  He also said that
the other information on State’s exhibit thirteen was identical to the
information contained on the previously confirmed convictions.  See Ortiz v.
State, No. 02-07-00397-CR, 2008 WL 4602243, at *2 (Tex. App.—Fort Worth Oct. 16,
2008, pet. ref’d) (mem. op., not designated for publication) (holding that
State sufficiently linked defendant to prior conviction when his fingerprints
matched those on jail card, which contained same CID number as that on
indictment, although judgment did not contain CID number).  We overrule the
remaining portion of Norris’s first point.

B.      Effectiveness
of Counsel

In
her second point, Norris argues that the trial court abused its discretion by
overruling her motion for new trial as to the guilt-innocent phase of trial. 
Norris argues that she received ineffective assistance of counsel because trial
counsel failed to “fully investigate mental health issues in this case.”  The
State argues, among other things, that Norris has failed to demonstrate that
the outcome of the trial would have been different but for trial counsel’s
alleged errors.  We agree with the State.

To
establish ineffective assistance of counsel, the appellant must show by a
preponderance of the evidence that her counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Davis v. State, 278 S.W.3d 346, 352 (Tex.
Crim. App. 2009).

In
evaluating the effectiveness of counsel under the first prong, we look to the
totality of the representation and the particular circumstances of each case.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  The issue is whether
counsel’s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.

The
second prong of Strickland requires a showing that counsel’s errors were
so serious that they deprived the defendant of a fair trial, i.e., a trial with
a reliable result.  Id., 466 U.S. at 687, 104 S. Ct. at 2064.  In
other words, appellant must show there is a reasonable probability that, but
for counsel’s unprofessional errors, the result of the proceeding would have
been different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Id.  The ultimate focus of our inquiry must be on the
fundamental fairness of the proceeding in which the result is being
challenged.  Id. at 697, 104 S. Ct. at 2070.

There
is no requirement that we approach the two-pronged inquiry of Strickland
in any particular order, or even that we address both components of the inquiry
if the defendant makes an insufficient showing on one component.  Id.,
466 U.S. at 697, 104 S. Ct. at 2069.

In
this case, we will assume without deciding that trial counsel failed under the
first prong of Strickland when he failed to investigate issues of
Norris’s mental health.  Indeed, the trial court determined that trial
counsel’s assistance fell below prevailing professional norms in light of the
circumstances of Norris’s having a lengthy history of mental health issues and
trial counsel’s admittedly failing to investigate that history.  In fact, the
trial court granted Norris’s motion for new trial as to punishment.

But there
was no evidence offered at the hearing on the motion for new trial that any
physician or social worker would have testified that, due to Norris’s mental
health issues, the mens rea element to commit the crime of which
she was convicted, assault causing bodily injury to a public servant, was
somehow negated.[3]  See Ruffin v. State,
270 S.W.3d 586, 588 (Tex. Crim. App. 2008) (“[T]estimony of a mental disease or
defect that directly rebuts the particular mens rea necessary for
the charged offense is relevant and admissible unless excluded under a specific
evidentiary rule.”).

The
record does not demonstrate how trial counsel’s not having investigated
Norris’s mental health issues undermines confidence in the jury’s verdict of
guilty.  See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. 
Norris does not even analyze in her brief how the second prong of Strickland
is satisfied, stating only in one short paragraph that due to trial counsel’s
failure to investigate Norris’s “diminished capacity,[4]
[Norris] has been foreclosed from showing that she did not possess the
requisite mens rea.”  In short, Norris has failed to show that there is a
reasonable probability that, but for counsel’s failure to investigate her mental
health history, the result of the proceeding would have been different.  See
Conrad v. State, 77 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2002, pet. ref’d)
(holding that even though appellant satisfied Strickland’s first prong
by proving counsel failed to investigate evidence of mental insanity, his ineffective
assistance claim failed because he did not present sufficient evidence at
motion-for-new-trial hearing to show outcome of trial would have been different).
 We overrule Norris’s second point.

IV.  Conclusion

Having overruled both of Norris’s points, we
affirm the trial court’s judgment.

 

 

BILL MEIER
JUSTICE

 

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: 
June 14, 2012









[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code
Ann. § 22.01(b)(1) (West 2011).





[3]There was evidence
presented at the second punishment hearing that Norris suffered from a number
of mental health issues, including:  poor impulse control,
posttraumatic stress disorder, recurrent depressive disorder, amphetamine
dependence, and borderline personality disorder.  But there was no evidence
presented at any phase of trial to show how Norris’s mental health issues might
have been offered to rebut or negate that she possessed the specific intent to
assault Wingate.  See Tex. Penal Code Ann. § 22.01(a)(1) (West
2011) (“A person commits an offense if the
person . . . intentionally, knowingly, or recklessly causes
bodily injury.”); see also Jackson v. State, 160 S.W.3d 568, 574 (Tex.
Crim. App. 2005) (“As with the other elements of the offense, relevant evidence
may be presented which the jury may consider to negate the mens rea
element.”).





[4]We note that “The court of
criminal appeals has consistently reasoned that Texas does not recognize
diminished capacity as an affirmative defense.”  See Acevedo v. State,
No. 02-10-00187-CR, 2011 WL 567630, at *1 (Tex. App.—Fort Worth Nov. 17, 2011,
pet. ref’d).