ACCEPTED
06-15-00117-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
10/21/2015 8:12:44 PM
DEBBIE AUTREY
CLERK

No. 06-15-00117-CR

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
10/22/2015 8:01:00 AM
DEBBIE AUTREY
Clerk

JOSEPH LEO STREHL, III
APPELLANT

VS.

THE STATE OF TEXAS
APPELLEE

On Appeal from the 4TH Judicial District Court of Rusk County, Texas
Cause Number CR15-075
Rusk County, Texas
Judge J. Clay Gossett

APPELLANT'S BRIEF

ORAL ARGUMENT REQUESTED

Jeff Sanders
State Bar No: 24033153
120 S. Broadway, Suite 112
Tyler, Texas 75702
(903) 593-8040
(903) 595-5532 fax
jdsanderslaw@yahoo.com

ATTORNEY FOR APPELLANT

# IDENTITY OF PARTIES AND COUNSEL

A.  Parties to Trial Court's Judgment:

Appellant is JOSEPH LEO STREHL, III.
Appellee is The State of Texas.

B.  Names and Addresses of Trial and Appellate Counsel

1.  JOSEPH LEO STREHL, III

Jeff Sanders
120 S. Broadway, Suite 112
Tyler, Texas 75702

2.  The State of Texas

Michael Jimerson
Rusk County District Attorney's Office
115 N. Main St., Suite 302
Henderson, Texas 75652

# TABLE OF CONTENTS

PAGE

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv - v

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# INDEX OF AUTHORITIES

**CASES**                                                           **PAGE**

Jackson v. Virginia, 443 U.S. 307, 319 (1979) . . . . . . . . . . . . . . . . . . . 10

Beck v. State, 719 S.W.2d 205 (Tex.Crim.App. 1986) . . . . . . . . . . . . 10-11

Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) . . . 18-19

Elizalde v. State, 507 S.W.2d 749, 752 (Tex.Crim.App. 1970) . . . . . . . 11

Hubert v. State, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010) . . . . . . . . . 18

Hulit v. State, 982 S.W.2d 431, 432 (Tex.Crim.App. 1998) . . . . . . . . . . . 20

Human v. State, 749 S.W.2d 832, 838 (Tex.Crim.App. 1988) . . . . . . . . 11

Littles v. State, 726 S.W.2d 26 (Tex.Cr.App. 1984) . . . . . . . . . . . . . . . 11

Martinez v. State, 348 S.W.3d 919, 923 (Tex.Crim.App. 2011) . . . . . . 20-21

Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) . . . . . . . . 18

Neal v. State, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008) . . . . . . . . . . 18

Russell v. State, 717 S.W.2d 7, 9-10 (Tex.Crim.App. 1986) . . . . . . . . . . 20

Sheperd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) . . . . . . . . 18

State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) . . . . . . . . . 19

State v. Castleberry, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) . . . . . 19

State v. Iduarte, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008) . . . . . . . . . 20

Valtierra v. State, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) . . . . . . . 19

<u>Vessels v. State</u>, 432 S.W.2d 108 (Tex.Crim.App. 1968) . . . . . . . . . . . .   10

<u>Cruz v. State</u>, 346 S.W.3d 601, 602-603 (Tex.App.—El Paso 2009). . . 12-13

<u>Griffin v. State</u>, 866 S.W.2d 754, 756 (Tex.App.—Tyler 1993, no writ)12,14

<u>Zimmer v. State</u>, 989 S.W.2d 48, 50-52 (Tex.App.—San Antonio 1998) . . .
12-13, 17

## STATEMENT OF THE CASE

The Rusk County District Attorney charged Appellant by Indictment for the offense of Driving While Intoxicated Third or More on April 6, 2015. (CR 6). Said Indictment arose from Appellant's arrest on August 25, 2014. Said Indictment also contained two paragraphs regarding prior Driving While Intoxicated convictions to give the District Court jurisdiction and one additional paragraph regarding a prior Driving While Intoxicated conviction for further enhancement purposes. (CR 6).

Parties announced "Ready" for jury trial and conducted voir dire on June 15, 2015. (CR 104). Concerning the jurisdictional and enhancement paragraphs, the State, first, abandoned the second jurisdictional paragraph in the Indictment. The State then filed a Brooks Notice where it alleged the previous second jurisdictional paragraph as the enhancement paragraph. (CR 31-32). On June 16, 2015, Appellant filed (1) a motion to dismiss for lack of jurisdiction, (2) a motion to quash the Brooks Notice, (3) a motion to quash the enhancement paragraph (which became the second jurisdictional paragraph), (4) and a motion to quash the first jurisdictional paragraph. (CR 49-57). The four motions were filed due to incorrect information alleged in

1

the Indictment and in the Brooks Notice that did not match the information on the certified copies of judgments and sentences. All four motions were denied on June 16, 2015. (CR 58-60, 104).

After those rulings on June 16, 2015, Appellant entered a plea of Not Guilty, and the State proceeded with its case-in-chief. Appellant had also filed a Motion to Suppress which was carried through trial. (CR 27). The Motion to Suppress was denied prior to the State resting its case-in-chief (RR 85).

Appellant timely filed Notice of Appeal on June 18, 2015. (CR 91). The Certification By Trial Court to allow this appeal was filed on June 17, 2015. (CR 84). Appellant appeals the judgment and sentence based on two reasons. First, Appellant's appeal is based on legally insufficient evidence to prove a jurisdictional prior conviction. Second, the appeal is based on the trial court's error in denying Appellant's motion to suppress illegally seized evidence.

## ISSUE NUMBER ONE PRESENTED

**The trial court committed reversible error when it incorrectly admitted into evidence a prior conviction for Driving While Intoxicated, specifically State's Exhibit Six, for jurisdictional purposes.**

## ISSUE NUMBER TWO PRESENTED

**The trial court committed reversible error when it denied Appellant's motion to suppress the traffic stop and detention of Appellant by the Henderson police officer.**

## STATEMENT OF THE FACTS

During the early morning hours of August 25, 2014, Officer Josiah Lemelin of the Henderson Police Department was on patrol and was contacted by dispatch concerning a possible driving while intoxicated suspect. (RR 29). Dispatch advised the officer that an individual called the police department regarding seeing a man at a convenience store who appeared to be intoxicated and who was asking directions to Lowe's. (RR 29). The caller advised that the man later got into and drove a white Peterbilt truck with an unknown license plate number. (RR 29). The caller's identification was not given to the officer, and the officer did not talk to the caller prior to looking for this white Peterbilt. (RR 29, 54). Rather, the caller, who provided his own identification information, talked to a dispatcher who then relayed the information to the officer. (RR 29). The

3

officer testified that he located a white Peterbilt truck that was weaving within its lane and then made a wide turn into the Lowe's parking lot. (RR 29-30). The officer later stated that the left turn was proper and was not a wide turn, based on what was seen on video and written in his report. (RR 58). The officer engaged his overhead lights and tried to get the truck to pull over prior to the truck turning into the Lowe's parking lot. The officer later detained the truck and driver in the Lowe's parking lot. (RR 30).

At trial, Officer Lemelin testified that the reason for the traffic stop was reasonable suspicion of a DWI. (RR 60). He stated, "A concerned citizen called, and reasonable suspicion is probable cause as well in the State of Texas." (RR 60-61). The officer then confirmed that he did not talk to the concerned citizen nor did he know the identity of the concerned citizen at the time of the traffic stop. (RR 61). The officer also stated that he didn't know if the citizen caller even observed the Appellant operating the truck on the road. (RR 62-63). The officer further admitted that he did not observe Appellant commit any traffic violations that would justify pulling Appellant over to detain him. (RR 61, 63). As the officer tried to explain reasonable suspicion, probable cause, and the reason he pulled the truck over, he

4

summarized that the reason he stopped Appellant was "the safety of the public." (RR 62).

Upon making contact with the driver, whom the officer identified in court as the Appellant, the officer administered standardized field sobriety tests to the Appellant. Based on Appellant's performance of the tests, Appellant was arrested for Driving While Intoxicated. The officer then obtained a warrant to draw blood from Appellant to determine his blood alcohol concentration.

The concerned citizen, Scott Lake, testified at trial regarding his observations on August 25, 2014. Lake testified that he owns a trucking company and was at the Henderson Depot getting fuel during the early morning of August 25, 2014. (RR 16-17). He said there was a man inside the store who was trying to find out what direction he needed to travel because he was lost. (RR 17). Lake said that the man "had a strong odor, something similar to like, I guess, alcohol. I don't know, just a strong odor." (RR 18). He said he called 911 to tell what he had seen after watching the man enter a truck because he was concerned for public safety. (RR 19). He also stated that he did not observe the truck traveling down the road and did not see any traffic violations. (RR 24).

5

The State offered into evidence a recording of Lake's 911 call. Appellant objected that the proper predicate was not laid because there was not a custodian of record to testify regarding the recording. (RR 20). Appellant also objected that the 911 call was hearsay. The court overruled both objections and admitted the 911 call into evidence. (RR 20). At no point during Lake's testimony did he ever identify Appellant as the man he observed in Henderson Depot with a strong odor who then drove a white Peterbilt truck in the direction of Lowe's.

At the conclusion of the officer's testimony, Appellant urged his motion to suppress based, first, on Scott Lake not identifying the Appellant as the man with a strong odor who he believed smelled like alcohol. There was no evidence stating that Appellant was the man about whom Scott Lake called 911. Nor was there any evidence that Appellant was the man whom Scott Lake said got into a white Peterbilt and drove in the direction of Lowe's. Next, Appellant then urged in his motion to suppress that there was no evidence of any traffic violation whatsoever. (RR 82-83). The officer based his decision to stop the white Peterbilt on what the caller told dispatch. The officer did not know the name of the caller and had not talked to the caller. (RR 82-83). The court then denied the motion to suppress. (RR 85).

6

Later in the trial, the State called William Brown to testify as its fingerprint expert. (RR 100). Brown testified that he obtained Appellant's fingerprints on a ten-print card, which was admitted as State's Exhibit Four. (RR 102-103). The State then used William Brown as the sponsoring witness to offer State's Exhibit Six into evidence. Appellant objected that the prior conviction marked as Exhibit Six was not the prior conviction alleged as a jurisdictional paragraph nor was there any evidence, including fingerprints, connecting Exhibit Six with Appellant. (RR 108). The court overruled Appellant's objections. (RR 108). As William Brown testified about Exhibit Six, the only information on Exhibit Six that had anything to do with Appellant's identity was the name. Nothing more. Exhibit Six contained no fingerprints to connect Appellant with the conviction. (RR 109). William Brown later testified that, other than the name, he had no other way of identifying or connecting Exhibit Six with Appellant. (RR 110).

A motion for directed verdict was urged by Appellant because of the prior convictions being improperly admitted into evidence. The motion for directed verdict was denied. (RR 112).

7

In closing argument, Appellant argued that the document admitted into evidence as State's Exhibit Six, which was the 2002 conviction without any identifying information such as a fingerprint, should not be considered because it wasn't proven beyond a reasonable doubt that the prior conviction depicted in Exhibit Six was a prior conviction of Appellant. (RR 123).

## SUMMARY OF THE ARGUMENT

Appellant's position is two-fold. First, the trial court erred in allowing Exhibit Six to be admitted into evidence. The trial court did not have jurisdiction for this case to be prosecuted as a felony because there was legally insufficient proof that Appellant was convicted of two prior charges of Driving While Intoxicated.

Second, the trial court erred by improperly denying Appellant's motion to suppress. The motion to suppress should have been granted because (1) the officer did not observe any violations of the law or any other acts that would have given him probable cause of a traffic violation or reasonable suspicion of a possible DWI, (2) the civilian caller did not observe any traffic violations by the driver of the white Peterbilt, and (3) the civilian never identified Appellant as being the man and driver about whom he called 911 on the morning of August 25, 2014.

As such, with one prior conviction proven at trial, at most, Appellant is guilty of a Driving While Intoxicated Second, a Class A misdemeanor. However, based on the trial court's incorrect ruling on the motion to suppress, Appellant's conviction ought to be reversed.

## ARGUMENT NUMBER ONE

**The trial court committed reversible error when it overruled Appellant's objection to the admission of State's Exhibit Six into evidence when said exhibit was legally insufficient evidence to connect Appellant with a prior conviction.**

### A. Standard of Review

The standard of review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt after considering the evidence in the light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979).

### B. The Law on Relevance and Admissibility of Prior Convictions

Texas case law has consistently held that a prior conviction of a defendant may be established by certified copies of a judgment and sentence as well as authenticated copies of the Texas Department of Criminal Justice records, including fingerprints, supported by expert fingerprint testimony identifying the fingerprints on the documents as identical with the defendant's known fingerprints. Vessels v. State, 432 S.W.2d 108 (Tex.Crim.App. 1968); Beck v. State, 719 S.W.2d 205 (Tex.Crim.App. 1986). The use of fingerprints to prove prior convictions is only one method. Another method is the testimony of a witness who personally

knows the defendant, knows of the prior conviction, and identifies the defendant. Id. at 209-210. Still another way is the stipulation or judicial admission of the defendant. Id.

Even without fingerprints, a penitentiary packet with a photo of the defendant can be sufficient to connect the prior judgment to the defendant on trial. Littles v. State, 726 S.W.2d 26 (Tex.Cr.App. 1984). Other personal information in a penitentiary packet, such as age, height, weight, hair color, eye color, social security number, or date of birth might also be sufficient to connect a prior conviction to the defendant. Human v. State, 749 S.W.2d 832, 838 (Tex.Crim.App., 1988).

While the documents might be admissible because they are certified copies, they are not normally sufficient on their own to prove prior convictions. Beck at 210. The documents themselves are not sufficient even if the name on the judgement and sentence are the same as the defendant in trial. Elizalde v. State, 507 S.W.2d 749, 752 (Tex.Crim.App. 1970). The State still has to prove by independent evidence that the defendant is the person who was previously convicted. Beck at 210.

11

The essential element in proving a defendant's prior conviction is evidence of identity independent of evidence from a penitentiary packet. Cruz v. State, 346 S.W.3d 601, 602 (Tex.App.—El Paso 2009); Zimmer v. State, 989 S.W.2d 48, 50 (Tex.App.—San Antonio 1998); Griffin v. State, 866 S.W.2d 754, 756 (Tex.App.—Tyler 1993, no writ).

Case law is quite clear that the State must connect the evidence of the prior conviction with the identity of the defendant on trial. For example, in Cruz, the State alleged two prior convictions to enhance the punishment range to that of a habitual offender. Cruz at 602. The State offered one prior conviction as Exhibit 3 (Cause Number 1404) and another prior conviction as Exhibit 5 (Cause Number 2523) for enhancement purposes. The judgment in Cause Number 1404 did not have a fingerprint on it but the other one did. The fingerprint expert compared the defendant's fingerprints with the fingerprints of the booking packet associated with the charge that resulted in the judgement in Cause Number 1404. However, the booking packet was never admitted into evidence. The El Paso Court of Appeals, relying at least in part on Zimmer, said:

We do not have evidence showing that the person named in the judgment for cause number 1404 is the same as the person in the booking packet or who stood trial for this offense. While the identical names indicate the person is probably the same, probably is not good enough when it is the critical element being used for enhancement. Without the booking packet in evidence, there is insufficient evidence to link the defendant from the judgment in cause number 1404 to the defendant who was on trial in this case. The State failed to meet its burden of proving beyond a reasonable doubt the defendant's prior conviction. Cruz at 603.

Similarly, in Zimmer, the San Antonio Court of Appeals dealt with an issue where the State prosecuted the defendant for felony DWI but did not have a fingerprint on the judgement and sentence on one of the two prior convictions. The judgment and sentence in Cause Number 530867 did not have a fingerprint. The fingerprint expert matched the defendant's known prints to the prints on the booking slip associated with Cause Number 530867. The trial court sustained defendant's objection as to the admission of the booking slip but admitted the judgment (without fingerprints) into evidence. The fingerprint expert testified that he could not link the defendant on trial with the judgment in Cause Number 530867. Id. at 50. In fact, the court said even if the booking slip had been admitted, it wasn't sufficient to prove it was that defendant who was previously convicted. Id. at 52.

13

The San Antonio court stated:

We are left only with testimony that the fingerprint on the back of a booking slip, which is not in evidence, matches that of the defendant, and a judgment convicting a person named Patricia Sandifer, who was arrested on the same day. What we do not have is anything which proves, by independent evidence, that the Patricia Sandifer of the judgment in cause no. 530867 is the same person in the booking slip, the previous judgment, or the person on trial for felony DWI. Because of the coincidence of the name and date, she probably is the same person. But probably is not good enough when it is the critical element being used for enhancement. Id. at 52.

The Tyler Court of Appeals handled a nearly-identical situation in the same manner in Griffin v. State, 866 S.W.2d 754 (Tex.App.—Tyler, 1993). In that case the defendant was charged with DWI with two prior convictions. The State offered into evidence exhibits three, four, and five. Exhibit Three was defendant's Department of Public Safety driving record. Exhibits four and five were the judgements and sentences of two prior convictions. Objections to all three exhibits were overruled by the trial court. Id. at 756. The Tyler Court of Appeals explained that, except for the similarity in names, there was no other evidence to prove that the driving record in Exhibit Three was the defendant's driving record. The Court went on to say that, while the driving record contains information about the two prior convictions which correspond with Exhibit Four and Exhibit Five, there was

**14**

still no evidence proving that it was the defendant on trial who was the same person named in the three exhibits. In relying on <u>Beck</u>, <u>Elizalde</u>, and <u>Vessels</u>, the Tyler Court of Appeals stated:

> Even if the name on the judgment or other document is the same as that of the defendant on trial, it is incumbent on the State to go forward and show by other independent evidence that the defendant is the same person previously convicted. . . . . . Therefore, even if it be conceded the trial court properly admitted the challenged State's exhibits, standing alone, they are insufficient to prove the prior convictions. There is evidence that all three exhibits pertain to the same person, but there is insufficient independent evidence that they are prior convictions of Appellant. <u>Id</u>. at 756.

### C. Analysis

When applying Texas case law to the facts of Appellant's case, it is clear that State's Exhibit Six was legally insufficient to prove that Appellant was convicted of DWI in Cause Number F35365 in Johnson County, Texas, on February 20, 2002. As previously outlined, there are numerous ways to sufficiently prove the prior conviction of a defendant on trial. The State can rely on the fingerprint comparison to a prior judgment and sentence. The State can call a witness who knew the defendant and knew the defendant was convicted of the prior charge. The State can rely on an admission or judicial confession of the defendant. Or the State can rely on the photograph

**15**

in a penitentiary packet or other identifying information in the penitentiary packet as independent evidence to connect the defendant with the prior conviction.

In this instance, the Appellee failed to utilize any of those methods to prove that State's Exhibit Six was indeed a prior conviction of the Appellant. When reviewing the testimony of William Brown, the Appellee's fingerprint expert, it is clear that he did not do a fingerprint comparison with State's Exhibit Six because there was no fingerprint on Exhibit Six. (RR 108). State's Exhibit Six did not contain a photograph of Appellant, nor did it contain other identifying information about Appellant like date of birth or social security number. Additionally, there is no evidence in the record that the State relied on another witness to testify of his or her knowledge of the identity of Appellant and knowledge of Appellant's prior conviction labeled as State's Exhibit Six. In fact, William Brown later admitted that, other than the name, he had no other way of connecting Exhibit Six with Appellant. (RR 110).

As in Zimmer, Cruz, and Griffin, this case involves a certified copy of a prior judgment and sentence without any fingerprints on the judgments and sentences to positively connect to the Appellant. Similarly, there was no

**16**

witness in this case who knew Appellant and knew of a 2002 DWI conviction. Furthermore, there were no other pieces of identifying information to connect Appellant to Exhibit Six. Just like in Zimmer, Cruz, and Griffin, the only piece of evidence connecting Appellant with Exhibit Six is the name. As those cases discuss, Appellant having the same name as that which is on Exhibit Six *probably* means he is the same person, but "probably is not good enough when it is the critical element being used for enhancement." Zimmer at 52.

Because the 2002 DWI conviction marked Exhibit Six is legally insufficient to prove that Appellant was convicted of DWI in 2002, the judgment of conviction of felony DWI third or more ought to be reversed. Based on the fact there is legally sufficient evidence of only one prior conviction, at most the judgment should be reformed so that Appellant is convicted of a Class A misdemeanor and then the case remanded for sentencing on a Class A misdemeanor DWI conviction.

17

## ARGUMENT NUMBER TWO

**The trial court committed reversible error when it denied Appellant's motion to suppress illegally seized evidence, namely, Appellant and the motor vehicle he was operating.**

### A. Standard of Review

A trial court's decision on a motion to suppress is subject to a bifurcated standard of review. Hubert v. State, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); Carmouche v. State, 10 S.W.3d 323, 327(Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. Sheperd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). Almost total deference is given to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. Neal v. State, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008).

When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's

testimony. Moreover, if the trial judge makes express findings of fact, the evidence is viewed in the light most favorable to the trial judge's ruling and determine whether the evidence supports those factual findings. <u>Valtierra v. State</u>, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When there is not an express finding on an issue, the appellate court infers implicit findings of fact that support the trial court's ruling as long as those findings are supported by the record. <u>See</u> <u>id.</u>

The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." <u>State v. Castleberry</u>, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. <u>Carmouche</u>, 10 S.W.3d at 327; <u>State v. Ballard</u>, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

The appellate court is to review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. <u>State v. Iduarte</u>, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

## B. The Law on Reasonable Suspicion for a Traffic Stop

Warrantless searches and seizures are per se unreasonable unless they fall into a recognized exception, and the State has the burden of establishing an exception to the warrant requirement. Russell v. State, 717 S.W.2d 7, 9-10 (Tex.Crim.App. 1986). The Court of Criminal Appeals said in Hulit v. State that in DWI investigatory detentions courts must rely on a totality of circumstances test as the reasonableness standard. 982 S.W.2d 431, 432 (Tex.Crim.App. 1998).

The State must present evidence to show that sufficient facts existed to prove that reasonable suspicion existed that a person has engaged in or soon will be engaging in criminal activity. Martinez v. State, 348 S.W.3d 919, 923 (Tex.Crim.App. 2011). The court is to consider the totality of the circumstances to determine reasonable suspicion which would include the content of the information and the reliability of the information. Id. The officer must have specific, articulable facts that establish reasonable suspicion and show (1) unusual activity, (2) a connection between defendant and the unusual activity, and (3) that the unusual activity is related to a crime. Id. When a 911 caller provides information to a dispatcher but not

the caller's identity, more information is required to be corroborated in order to increase the level of reliability. Id. When the caller leaves his identifying information with the dispatcher, the degree of reliability improves. Id.

C. **Analysis**

The Appellant's motion to suppress the traffic stop, detention, and evidence should have been granted for two reasons. First, the officer did not have reasonable suspicion that the offense of driving while intoxicated was being committed to justify the traffic stop. Second, the concerned citizen caller never testified that Appellant was the person he believed was intoxicated in the Henderson Depot. There was no positive identification of Appellant in trial in order to establish any reliability on the part of the caller.

Regarding the lack of reasonable suspicion, the officer did not observe any traffic violations by the Appellant in operating the truck. The officer testified that he solely relied on the information provided to dispatch by Scott Lake. The officer never talked to Lake prior to the traffic stop and did not know the identity of Lake at the time of the stop. (RR 61). The officer did not even know the license plate number. (RR 29). As such, it is Appellant's position that the officer needed more information to corroborate the information from dispatch. Since the officer did not observe

21

any traffic violations, he needed more reliable information prior to making the traffic stop. The officer can't just say he made the traffic for "the safety of the public." (RR 62).

The second aspect of the incorrect denial of Appellant's motion to suppress concerns Scott Lake's testimony in trial. At no point did Scott Lake identify Appellant as the man in the Henderson Depot who smelled of a strong odor. At no point in his testimony did Scott Lake say that Appellant was the person he thought might be intoxicated. At no point did Scott Lake testify that Appellant was the person driving a white Peterbilt. There is no evidence connecting the person Scott Lake thought might be intoxicated with the Appellant. Using the terms articulated in the Martinez decision, there is no evidence connecting Appellant with any unusual activity. As such, there is legally insufficient evidence at trial to prove that the officer had reasonable suspicion to justify a traffic stop of Appellant. The State didn't ask the right questions and didn't prove what it needed to prove. Therefore, the trial court committed error by denying the motion to suppress.

## PRAYER

WHEREFORE, Appellant prays that the Order of the trial court denying Appellant's Motion to Suppress be reversed and that Appellant be

22

acquitted of this charge. Subject to that, Appellant prays that the trial court's error in admitting a prior conviction marked Exhibit Six be reversed and that the case be remanded for sentencing on a Class A misdemeanor DWI conviction. Appellant also requests such other and further relief to which Appellant may be justly entitled.

Respectfully Submitted,

JEFF SANDERS
State Bar No.: 24033153
120 S. Broadway, Suite 112
Tyler, Texas 75702
(903) 593-8040
(903) 595-5532 fax

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify a true and correct copy of the foregoing instrument was served upon the Rusk County District Attorney's Office by electronic mail and facsimile on this the 21st day of October 21, 2015.

JEFF SANDERS

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), the undersigned attorney certifies that this brief complies with the length requirements of the Texas Rules of Appellate Procedure in that the brief has 5,718 words.

JEFF SANDERS

23